UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BCR SAFEGUARD HOLDING, L.L.C., et al.** | **CIVIL ACTION** |
| **VERSUS** | **NO.  13-0066** |
| **MORGAN STANLEY REAL ESTATE ADVISOR, INC., et al.** | **SECTION: "G"(1)** |

## ORDER AND REASONS

Before the Court is Defendants Morgan Stanley Real Estate Advisor, Inc. ("MSREA"), PPF Safeguard, LLC ("PPF"), and Scott Allen Brown's ("Brown") (collectively, "Defendants") "Motion to Reconsider Motion to Seal Complaint and Motion for Preliminary and Permanent Injunction Against the Improper Use or Disclosure of Privileged Material."[1] After considering the redacted complaint, the unredacted complaint, the pending motion, the memorandum in support, the opposition, the reply, the supplemental memoranda, the record, and the applicable law, the Court will grant in part and deny as moot in part the pending motion.

## I. Background

### A. Prior Actions and Relationships Among the Parties

In May 2009, Plaintiffs BCR Safeguard Holding, LLC ("BCR"), JAC Safeguard Holdings, LLC ("JAC"), and Safeguard Development Group II, LLC ("SDG") (collectively, "Plaintiffs"), filed a suit in Civil District Court for the Parish of Orleans, State of Louisiana ("CDC Litigation") seeking damages against Defendants "and related entities on theories largely similar to those being asserted in this action."[2] Plaintiffs in this action are each former members of non-party Safeguard Storage

---

[1] Rec. Doc. 26.

[2] Rec. Doc. 26-1 at p. 2.

Properties, LLC ("Safeguard"). Safeguard is now wholly owned by Defendant PPF, a Morgan Stanley affiliate that is ultimately controlled by Defendant MSREA.[3]

Safeguard operates self-storage facilities in seven states, including Louisiana. Between May 31, 2005 and July 31, 2009, Safeguard was owned by PPF, BCR, JAC, and SDG, pursuant to an Amended & Restated Limited Liability Company Agreement of Safeguard Storage Properties, LLC (the "LLC Agreement"). Bruce Roch ("Roch") formed BCR and is its sole managing member. Jack Chaney ("Chaney") formed JAC and is its sole and managing member.[4] Roch and Chaney together own SDG. Until July 31, 2009, PPF owned around 94% of Safeguard, while BCR, JAC, and SDG owned around 6%.[5] On July 31, 2009, pursuant to the LLC Agreement, PPF paid Plaintiffs BCR, JAC, and SDG for their interests in Safeguard, and now PPF owns 100% of Safeguard.[6] Simply for ease of reference, the Court will refer to PPF, MSREA and Safeguard collectively as the "Morgan Stanley Companies."

From May 31, 2005 until at least May 31, 2009, Roch and Chaney were senior executives at Safeguard with the responsibility of day-to-day management. Roch was CEO and President throughout this period, and Chaney was COO until May 31, 2008 when he resigned.[7] Defendants contend that as CEO and COO of Safeguard, Roch and Chaney were parties to numerous privileged communications between the Morgan Stanley Companies and their in-house and outside counsel,

---

[3] *Id.* at p. 3.

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.* Roch may have served as Chief Development Officer thereafter. *See id.*

but their access terminated upon their departure from Safeguard.[8] Moreover, Defendants claim that "[c]ertain of these privileged communications ... were the subject of discovery requests in the CDC Litigation, and the parties reached an agreement with the approval of that court to allow for their limited disclosure without waiving the Morgan Stanley Companies' privilege and work-product protection."[9] Defendants note that all parties in the CDC Litigation and this action are the same, except for the inclusion of certain Lloyd's of London insurers ("Lloyd's") as named defendants here.[10] As Lloyd's is not a movant in the pending motion, in this Order and Reasons the term "Defendants" does not include Lloyd's.

In February 2010, the parties to the CDC Litigation entered into a joint protective order ("Privilege Order" or "Protective Order")[11] that governed the production of privileged materials in the CDC Litigation and two related cases between the same parties pending in the Delaware Court of Chancery.[12] The Court also notes that there was an earlier September 2009 protective order entered by the CDC Litigation judge. Hereinafter, the terms "Privilege Orders" and "Protective Orders" will refer to the September 2009 and February 2010 documents collectively. Defendants argue that the Privilege Order stated that production of privileged material did not constitute waiver of any privilege and that recipients of such material were barred from making any use or disclosure

---

[8] *Id.* at p. 4.

[9] *Id.*

[10] *Id.*

[11] The parties use both terms in referring to this document. The Court notes that the terms refer to the same material.

[12] Rec. Doc. 26 at p. 4.

of such material outside of the subject litigation, absent an order by the state court.[13] Defendants claim that:

> The Privilege Order's prohibition on the use of Privileged Material in any other litigations is particularly important here, where Lloyd's is named as a co-Defendant and will have access to all case documents and allegations. This is because the majority of the Privileged Materials that were produced pursuant to the Privilege Order arose out of a separate litigation – also in the CDC for the Parish of Orleans – brought by Safeguard against its insurers, including Lloyd's (the "Katrina Litigation"). Unless Plaintiffs are enjoined from disclosing the Morgan Stanley Companies' Privileged Material in this action, Lloyd's will have access to the Morgan Stanley Parties' privileged communications and work product related to their case against Lloyd's and Safeguard's other insurers in the Katrina Litigation.[14]

**B. Procedural Background in this Action**

On January 11, 2013, Plaintiffs filed a Redacted Complaint in this matter.[15] Plaintiffs also sought to file an Unredacted Complaint into the record under seal,[16] and the Court granted the unopposed motion.[17] However, Defendants also requested that the Court place under seal the Redacted Complaint, claiming that it still contained numerous references to privileged materials.[18] Plaintiffs opposed the motion to seal the Redacted Complaint.[19] The Court immediately placed the Redacted Complaint under seal while it considered the pending motion.[20] On January 25, 2013, the Court denied the motion to place the Redacted Complaint under seal because Defendants had

---

[13] *Id.*

[14] *Id.* at p. 5.

[15] Rec. Doc. 1.

[16] Rec. Doc. 9.

[17] Rec. Doc. 15.

[18] Rec. Doc. 11.

[19] Rec. Doc. 19.

[20] Rec. Doc. 20.

"declined to identify the specific portions of the redacted complaint they f[ound] objectionable nor [did] Defendants argue[] in sufficient detail how disclosure of this information would negatively impact their interests," and therefore the Court was "unable either to confirm if confidential or privileged information actually remains in the redacted complaint or balance the public's common law right of access against the interests favoring nondisclosure."[21]

On January 28, 2013, Defendants filed the pending motion, which seeks reconsideration of this Court's order denying their request to place under seal the Redacted Complaint, and also prays for other injunctive relief.[22] In light of this motion, the Court ordered that the Redacted Complaint remain under seal until it ruled upon the pending motion.[23] The Court will first address Defendants' request for reconsideration, and then their motion for various injunctive relief.

## II. Defendants' Request for Reconsideration of Order Denying Placement of Redacted Complaint Under Seal

### A. Parties' Arguments

In support of reconsideration, Defendants claim that they "requested that the Redacted Complaint be maintained under seal provisionally for a period of 30 days or until such time as the Court rendered a final ruling on a motion that the Morgan Stanley Parties intended to file within such 30 days to protect and/or prohibit disclosure or use of their privileged information," and that is why they did not specifically include their grounds to seal the document.[24] Defendants argue that

---

[21] Rec. Doc. 24 at pp. 4-5 (internal quotation marks omitted).

[22] Rec. Doc. 26.

[23] Rec. Doc. 30.

[24] Rec. Doc. 26-1 at p. 6

5

the Redacted Complaint was filed in the open record, and therefore the Morgan Stanley Companies' privileged communications were available for public view.[25] Therefore, Defendants ask that this Court "enter an order temporarily sealing the Redacted Complaint until this motion for injunctive relief has been decided."[26] Defendants also note that they have now attached an exhibit, Exhibit A, to this motion setting forth the specific facts and items they believe are improper, thereby curing the deficiencies this Court identified in its prior order denying their request to seal the Redacted Complaint.[27]

Plaintiffs oppose reconsideration, arguing that Defendants' arguments do not satisfy the recognized elements to warrant consideration, because Defendants present no newly discovered evidence that would support their request, nor do they claim that this Court committed manifest error of law in entering the prior order.[28] As such, Plaintiffs contend that all arguments to seal presented in the pending motion could have been brought in the prior motion, but Defendants failed to do so.[29]

In reply, Defendants argue that "Plaintiffs' position ignores the fact that the order [denying Defendants' request to file the Redacted Complaint under seal] essentially invited the Morgan Stanley Parties to detail further what privileged material is contained in the Complaint. That further detail has been provided in this submission – and more than justifies the sealing of the complaint."[30]

### B. Analysis

---

[25] *Id.* at p. 16.

[26] *Id.*

[27] *Id.*

[28] Rec. Doc. 52 at p. 25.

[29] *Id.* at p. 26.

[30] Rec. Doc. 75 at p. 11.

Defendants have asserted that there was some misunderstanding regarding the nature of their request in their prior motion to seal the Redacted Complaint. Specifically, Defendants seem to argue that they did not provide the specifics needed for this Court to determine whether filing the Redacted Complaint under seal was appropriate, because the prior motion only requested "that the Redacted Complaint be maintained under seal provisionally for a period of 30 days or until such time as the Court rendered a final ruling on a motion that the Morgan Stanley Parties intended to file within such 30 days to protect and/or prohibit disclosure or use of their privileged information."

Defendants' assertion is incorrect and not supported by the record. The motion and the memorandum in support only requested that the Redacted Complaint be placed under seal, and makes no mention of the "provisional period" now mentioned in Defendants' briefing on the pending motion.[31] The language Defendants now use in the pending motion for reconsideration only previously appeared in the proposed order attached to their original motion to seal the Redacted Complaint, not the motion or the attached memorandum.[32] This Court considers the nature of relief requested in the motion and the memorandum in support, not language that only first appears in the proposed order to a contested motion, which drastically changes the nature of the motion. If Defendants only sought provisional placement under seal, until such time as they prepared a more comprehensive motion detailing their alleged justification for placing the Redacted Complaint under seal, they should have made that intention clear in the substance of their motion and memorandum in support. Further, the fact that Defendants now claim they intended to condition the motion to seal

---

[31] *See* Rec. Doc. Nos. 11, 11-1.

[32] Rec. Doc. 11-2.

to last provisionally for 30 days would not have relieved them of their duty to fully support that request.

Nevertheless, as previously noted, after the filing of the pending motion, the Court issued an order placing the Redacted Complaint under seal until it ruled on this motion.[33] Defendants' remaining requests for certain injunctive relief appear intermingled with this Court's decision of whether the Redacted Complaint should remain under seal. Therefore, the Court will deny Defendants' request for reconsideration as moot, because the Redacted Complaint is currently under seal, pending the Court's determination on Defendants' request for injunctive relief.

### III. Parties' Arguments on Defendants' Request for Certain Injunctive Relief

*A. Defendants' Arguments in Support of Injunctive Relief*

Defendants aver that after reviewing the complaint they have discovered "a significant number of emails and other communications referenced (and often directly quoted) in the Complaint [that] are undeniably subject to attorney-client privilege and/or the work product protection," between the Morgan Stanley Companies and their counsel.[34] Defendants have detailed these alleged instances in the attached Exhibit A.[35]

Defendants contend that "the referenced privileged communications appear never to have been shared with Plaintiffs in any legitimate fashion as they were not produced under the Privilege Order in the CDC Litigation."[36] Defendants also note that the description of these communications

---

[33] Rec. Doc. 30.

[34] Rec. Doc. 26-1 at p. 7.

[35] *See* Rec. Doc. 26-2.

[36] Rec. Doc. 26-1 at p. 8 (citing Rec. Doc. 26-2, Item Nos. 1-4).

makes it clear that they were protected.[37] Further, Defendants aver that "[t]he fact that certain other of the improperly referenced privileged communications were copied to Plaintiffs while Plaintiffs were still members and officers of Safeguard does not give Plaintiffs license to waive the Morgan Stanley Companies' privileges now that Plaintiffs are no longer Safeguard members or officers."[38] Defendants claim that Exhibit A demonstrates that the complaint references privileged communications in twenty-two paragraphs –  paragraphs 58, 57, 68, 73, 74, 75, 76, 77, 78, 79, 84, 100, 101, 104, 125, 134(c), 134(l), 134(m), 134(o), 134(p), 134(q), and 134( r) –  and that "[t]here can be no question that Plaintiffs are aware that these communications are privileged and governed by the terms of the Privilege Order."[39] As such, Defendants request that Plaintiffs be ordered to withdraw the Complaint and remove any references to privileged communications and be enjoined from making further use or disclosure of any privileged material of the Morgan Stanley Companies in this litigation.[40]

Moreover, Defendants request a preliminary and permanent injunction enjoining disclosure of the alleged privileged communications.[41] Defendants note that to receive a preliminary injunction, it must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat that they will suffer irreparable injury if the injunction is not issued; (3) that the threatened injury to them outweighs any damage the injunction might cause to the non-movant; and (4) that the injunction will

---

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.* at p. 9.

[41] *Id.* at p. 10.

not disserve the public interest.[42] Additionally, to obtain a permanent injunction, a party must show "'(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'"[43]

Concerning their likelihood of success, Defendants argue that the complaint "clearly falls within the scope of Morgan Stanley Companies' attorney-client privilege and/or work product protection, and Plaintiffs have no right to use or disclose such materials in this litigation or waive that privilege on these corporate entities' behalf."[44] Defendants maintain that the communications identified in the paragraphs at issue "directly or indirectly reference litigation strategy in related cases, including the Katrina Litigation," and that "Plaintiffs appear to have no legitimate basis for possessing several of the privileged communications to which they refer in their Complaint."[45] Defendants even opine that "Plaintiffs' mere possession of these communications may well be a violation of local professional responsibility rules which require lawyers who receive evidently privileged materials to immediately return them to opposing counsel and refrain from their use."[46]

Defendants reiterate their position that by the terms of the Privilege Order, the remaining privileged communications which were produced to Plaintiffs only under the terms of the Privilege Order, cannot be used or disclosed outside of the CDC Litigation absent an order of that court, which

---

[42] *Id.* (citing *Doe v. Duncanville Indep. Sch. Dist.*, 994 F.2d 160, 163 (5th Cir. 1993)).

[43] *Id.* (quoting *eBay v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

[44] *Id.* at pp. 10-11.

[45] *Id.* at p. 11.

[46] *Id.* (citing Louisiana Rule of Professional Conduct, Rule 4.4).

has not been issued to date.[47] Further, Defendants argue that even absent the Privilege Order, "Plaintiffs would have no right to make use of privileged matter they may have received while former employees of Safeguard, as former employees have no right to waive corporate privilege."[48] Defendants maintain that establshed case law insturcts that a corporation's attorney-client privilege belongs to the corporate entity, and can neither be asserted nor waived by former employees or managers.[49]

Turning next to irreparable harm, Defendants note that the Fifth Circuit has recognized the disclosure of privileged materials as constituting irreparable harm.[50] Defendants elaborate:

> Allowing the privileged allegations to be used in the Complaint and otherwise in this litigation will put the Morgan Stanley Parties in the untenable position of having to choose between defending against Plaintiffs' allegations based upon privileged materials, and protecting themselves against waiver of their privilege. The possibility of waiver of the privilege by the Morgan Stanley Parties will make it impossible to respond effectively to the Complaint and rebut Plaintiffs allegations as this case proceeds. Without the requested injunctive relief, the Morgan Stanley Parties thus will be left unable to defend themselves against a significant component of Plaintiffs' alleged case. This is neither just nor what the law requires.

> Merely ordering the redaction or sealing of the paragraphs containing the privileged materials would not be sufficient to protect the Morgan Stanley Parties' privilege. Allowing Plaintiffs to use such material in this litigation in any fashion would violate the Privilege Order, which limits use of the Privileged Materials produced thereunder to the CDC Litigation in which only Plaintiffs and the Morgan Stanley Companies are parties. In particular, sealing will not protect against potential waiver or other harm from disclosure of the privileged information in this case because Lloyd's is named as a party in this action. Lloyd's was adverse to the Morgan Stanley Companies in the Katrina Litigation – the case in which much of the Privileged

---

[47] *Id.* at p. 12.

[48] *Id.* (citing *Upjohn Co. v. United States*, 449 U.S. 383, 394-95 (1981)).

[49] *Id.* (citing *Commodity Fut. Trading Comm'n v. Weintraub*, 471 U.S. 343, 349 (1985)).

[50] *Id.* at p. 13 (citing *in re Burlington N., Inc.*, 822 F.2d 518, 522-23 (5th Cir. 1987)).

Material was generated – and they should not be privy to the Morgan Stanley Companies' privileged information in any fashion.[51]

Defendants also argue that the appropriateness of the relief they seek is further bolstered by Federal Rule of Civil Procedure 12(f), which allows courts to strike from a pleading any allegation that improperly contains or relies on privileged material; however, Defendants claim that they have not sought relief under Rule 12(f) because "the frequency and magnitude of the references to privileged material in the Complaint makes a motion to strike ... an insufficient alternative to the injunction" sought here.[52]

Defendants also urge that all the other relevant factors militate in favor of granting the requested injunction.[53] Concerning the hardship that may be imposed on the non-movant Plaintiffs, Defendants contend:

> Plaintiffs' blatant disregard of the Privilege Order in this Complaint suggests that if not restrained, they may again seek improperly to introduce or rely upon even more of the Morgan Stanley Companies' privileged communications. The Morgan Stanley Companies are entitled to the full extent of protection of their privileges that the law and the Privilege Order provides. Plaintiffs have no countervailing protected interest in permitting them to waive the Morgan Stanley Companies' privileges, even if the law allowed them to do so, which it does not.[54]

Lastly, Defendants maintain that there "is no public interest served in allowing Plaintiffs either to violate the terms of the Privilege Order or to disclose the Morgan Stanley Companies' privileged communications."[55] In fact, Defendants claim that courts have found that there is a public

---

[51] *Id.* at p. 14.

[52] *Id.* at pp. 14-15 & n. 6 (citing cases).

[53] *Id.* at p. 15.

[54] *Id.*

[55] *Id.* at pp. 15-16.

interest in protecting privilege.[56] Therefore, Defendants aver that they are entitled to the injunctive relief they seek in the pending motion.

## B. Plaintiffs' Arguments in Opposition to Injunctive Relief

In opposition, Plaintiffs argue that Defendants are merely attempting to "seal from the public eye" communications that demonstrate their allegedly improper behavior and intent to injure Plaintiffs.[57] Further, Plaintiffs argue that any relevant privilege was held in common between Plaintiffs and PPF, "and cannot be used defensively in this action against each other."[58] Plaintiffs contend that BCR, as an administrative member of Safeguard, "already possessed all unredacted communications in the Complaint that are challenged in the Injunction motion, ***prior to*** and independent from the commencement of the discovery in the CDC litigation."[59] Moreover, Plaintiffs highlight that Roch, former CEO of Safeguard and BCR's sole member, "was a direct recipient of and participant in many of the challenged communications," and therefore, "by the terms of the protective orders issued by the court in the CDC Litigation, no further confidentiality applies to those documents."[60]

Plaintiffs note that BCR was a member of Safeguard's management team, along with JAC, SDG, and Defendant PPF; while unanimous approval of Safeguard's Management Committee was required to approve the filing or settling of any litigation in excess of $250,000, Plaintiffs contend that "BCR's responsibility was not otherwise abrogated in conducting Safeguard's participation in

---

[56] *Id.* at p. 16 (citing cases).

[57] Rec. Doc. 52 at p. 4.

[58] *Id.*

[59] *Id.* at pp. 3-4 (emphasis in original).

[60] *Id.*

such litigation."[61] Plaintiffs explain that in August 2007, Safeguard filed suit against Lloyd's and other insurers for recovery of covered losses Safeguard suffered as a result of Hurricane Katrina (hereinafter, "Insurance Litigation" or "Katrina Litigation"). On behalf of Safeguard, Roch retained the law firm of Gauthier, Houghtaling & Williams ("Gauthier"), including attorney Ed Downing.[62]

Plaintiffs aver that after Downing represented that Safeguard's covered damages could be approximately $180 million and could implicate layers of insurance in excess of $200 million, on September 28, 2009 "Morgan Stanley's in-house counsel – Dina DeFalco (now Dina Romani) – called him to 'chastise' him."[63] Plaintiffs briefing does not make clear to whom Downing originally communicated this information. Plaintiffs further emphasize that "Ms. Romani made these representations in her capacity as a representative of **Morgan Stanley**, **_not_** **Safeguard**, admitting specifically that **Morgan Stanley** 'had other business interests to be concerned about other than the Safeguard insurance claim.'"[64] Apparently, Downing memorialized his conversation with Romani in a memo he provided to Safeguard "without any further confidentiality restrictions."[65] As such, Plaintiffs claim that Roch, on behalf of Safeguard's Administrative Member BCR, received a copy of the memo to file, and in turn BCR provided it to its counsel in this matter, Jones, Swanson, Huddell & Garrison ("Jones Swanson"), in May 2009, while he was still the Administrative Member of Safeguard.[66]

---

[61] *Id.* at pp. 5-6.

[62] *Id.* at p. 6.

[63] *Id.*

[64] *Id.*

[65] *Id.*

[66] *Id.* at pp. 6-7 (emphasis in original).

By October 2007, Safeguard retained another law firm, Sher Garner Cahill Richter Klein & Hilbert, L.L.C. ("Sher Garner") as litigation counsel for the Insurance Litigation arising from Katrina damage. According to Plaintiffs, an attorney from Sher Garner, Darnell Bludworth, discovered email communications between MSREA (Morgan Stanley) employees and the Insurers regarding the pending litigation. In response, Bludworth sent an email to Romani and Don Hammett, Safeguard's outside corporate counsel, which contained a draft email to send to the Insurers' counsel requesting that the communications cease.[67]

Romani responded to the email, copying Bludworth, Hammett, and Sher Garner's Jim Garner, stating: "I don't want to tip the boat unless we have to. **We** have significant relationships to protect **on the investment banking side**, as well as policies to continue renewing, and sending this email may compromise, albeit slightly, those relationships."[68] Plaintiffs state that "[t]his comment was not in representation of Safeguard's interests in the Insurance Litigation; Safeguard has no 'investment banking side,' and Safeguard was not responsible for obtaining the insurance renewals."[69] Six days after this exchange, Hammett, Safeguard's corporate counsel, forwarded a copy of this correspondence to Roch, Safeguard's CEO and sole member of one of its Administrative Members, BCR, who in turn provided it to Jones Swanson in May 2009, while still the Administrative Member of Safeguard.[70]

---

[67] *Id.* at p. 7.

[68] *Id.* (emphasis in Plaintiffs' memorandum).

[69] *Id.*

[70] *Id.* at pp. 7-8.

In January 23, 2009, Jim Garner sent an email to numerous parties, including Roch and Romani, wherein he suggested adding a bad faith claim against all Insurers, but Romani responded with "absolutely not." Plaintiffs claim that Roch was a part of this email chain, and therefore was in possession of the communications, and provided it to Jones Swanson in May 2009, again while still the Administrative Member of Safeguard.[71] Plaintiffs argue that Roch came into possession of many other communications in a similar fashion.[72]

Plaintiffs explain that during the CDC Litigation, the court entered two protective orders regarding materials produced in that case: (1) a September 2009 order; and (2) and February 2010 order (collectively, the "Protective Orders").[73] According to Plaintiffs, the September 2009 order applies to materials designated as "Confidential" in "this action" and broadly defines such documents to "include the captioned action in the Civil District Court for the Parish of Orleans, docket number 2009-4705..., as well as any action the prosecution of which the Court in the Louisiana Action has enjoined, **including but not limited to** the action filed in the Delaware Court of Chancery and assigned docket number 4594-VCS and the action filed in the Delaware Court of Chancery and assigned docket number 4712-VCS."[74]

Plaintiffs argue that the September 2009 order does not prohibit the use of the objected to documents here because Plaintiffs "brought the claims that were dismissed from the CDC Litigation in the Complaint in the instant matter."[75] Further, Plaintiffs note that the September 2009 order

---

[71] *Id.* at p. 8.

[72] *See id.* at pp. 8-12.

[73] *Id.* at p. 12.

[74] *Id.* at pp. 12-13 (emphasis in Plaintiffs' memorandum).

[75] *Id.* at p. 13.

expressly states that it "shall not restrict the use of documents or information obtained outside this action."[76] Concerning the February 2010 protective order, Plaintiffs state that it did not supersede the September 2009 order, bur rather expressly incorporated it, and also specified that where the term "Morgan Stanley entity" was used that 'Safeguard should not be considered a 'Morgan Stanley entity.'"[77]

Therefore, Plaintiffs argue that it is Defendants' burden to demonstrate that the attorney-client privilege applies, and as such must show:

> (1) that the communication was "made for the purpose of facilitating the rendition of professional legal services **to the client**; and (2) that the communication is "[b]etween the client or a representative of the client and the client's lawyer or a representative of the lawyer," or "[b]etween the lawyer and a representative of the lawyer," or "[b]y the client or his lawyer, or a representative of either, to a lawyer, or representative of a lawyer, who represents another party concerning a matter if common interest," or "[b]etween representatives of the client or between the client and a representative of the client," or "[a]mong lawyers and their representatives regarding the same client," or "[b]etween representatives of the clients lawyer." La. C.E. art. 506(B).[78]

Further, Plaintiffs state that it is Defendants' burden to prove that no exception to the privilege applies, such as if the communications were in furtherance of a crime or fraud. Plaintiffs also raise the "common-interest exception," which states that in certain circumstances, when the same attorney acts for two or more parties having a common interest, neither can exercise privilege in a subsequent lawsuit with one another.[79]

---

[76] *Id.*

[77] *Id.*

[78] *Id.* (emphasis and alterations in original).

[79] *Id.* at p. 15 (citing La. C.E. art. 506(C)(1), (5)).

Plaintiffs argue that Defendants fail to carry their burden to demonstrate that the communications were between an attorney and that attorney's client or a representative of the client.[80] Further, Plaintiffs contend that throughout Defendants' briefing they lump "Morgan Stanley [MSREA] and PPF *with non-party Safeguard* as 'the Morgan Stanley Companies,' in order to baldly assert that various counsel for Safeguard were also counsel for Morgan Stanley [MSREA] and that the communications at issue were between 'the Morgan Stanley Companies' and 'their counsel.'"[81] Therefore, Plaintiffs aver that there is no collective "Morgan Stanley Companies" involved in the underlying facts and litigation, and that Safeguard's counsel was retained and paid for by Safeguard and its members, not MSREA.[82]

Moreover, Plaintiffs argue that the communications from MSREA's employees "in the subject communications [cannot] be deemed as from Safeguard's 'representative' for purposes of preserving the privilege."[83] Further, Plaintiffs highlight that the communications appear to advance the interests of MSREA, "distinct from (indeed, in opposition to) the interests of Safeguard."[84] In addition, Plaintiffs argue that even if these communications were initially privileged, MSREA's "communications were in furtherance of predicate acts of conspiracy to commit fraud, [and therefore] fall squarely within the fraud exception to the privilege."[85]

---

[80] *Id.*

[81] *Id.* at p. 16 (emphasis in original).

[82] *Id.*

[83] *Id.*

[84] *Id.*

[85] *Id.* at p. 17 (citing La. C.E. art. 506(C)(1)).

However, Plaintiffs also assert that any privilege on these communications (that was not destroyed) cannot be used defensively here because it was held jointly between clients with a common interest in the Insurance Litigation.[86] Plaintiffs note that in *Garner v. Wolfinbarger*,[87] the Fifth Circuit acknowledged that in "many situations in which the same attorney acts for two or more parties having a common interest, neither party may assert the privilege in a subsequent controversy with the other."[88]

Plaintiffs contend that "[t]he Morgan Stanley defendants here attempt to evade the effect of the common interest exception to the privilege by citing decisions where, ***in the corporate context***, after the change of control of a corporation a former corporate representative no longer is empowered to exercise the corporation's privilege."[89]Additionally, "[t]he [Supreme] Court in *Weintraub* made clear that it is the particular characteristics of a corporate form and the attendant fiduciary duties that extend from current directors and managers of a corporation to shareholders that dictates this result – a structure that is not repeated in the LLC context such as present in Safeguard."[90] Moreover, Plaintiffs argue that even in the corporate context, a privilege may only be exercised to invoke the best interests of the holder of the privilege, and therefore Defendants "should not be allowed to invoke Safeguard's privilege to protect their own interest."[91] Finally, Plaintiffs argue that in *Garner*, the Fifth Circuit extended the common interest exception to partnerships,

---

[86] *Id.* (citing La. C.E. art. 506(C)(5)).

[87] 430 F.2d 1093 (5th Cir. 1970).

[88] *Id.* at 1103.

[89] Rec. Doc. 52 at p. 19 (emphasis in original).

[90] *Id.*

[91] *Id.* (citing *In re Occidental Petrol. Corp.*, 217 F.3d 293, 297 (5th Cir. 2000)).

which they claim is relevant because Safeguard is a Delaware LLC, and the Delaware Court of Chancery has recognized that the Delaware LLC Act is based upon its Limited Partnership Act, and is "in many material respects, identical" to the Limited Partnership Act. Therefore, Plaintiffs argue the exception in *Garner* applies to Safeguard, a Delaware limited liability company, and therefore Defendants may not exercise privilege in this matter.[92]

As yet another argument for the propriety of the use of these communications, Plaintiffs claim that they had the authority to exercise or waive any privilege, because up until PPF's acquisition of Plaintiffs' ownership in Safeguard, "any privilege over the challenged communications was indisputably within BCR's control at least until July 20, 2009."[93] Therefore, Plaintiffs argue that Roch, as a member of BCR, which in turn was an Administrative Member of Safeguard, had the authority to waive any privilege with Safeguard's counsel while Roch acted in that capacity, and did so when he provided the communications to Jones Swanson in May 2009.[94]

In addition, Plaintiffs claim that the challenged communications are not otherwise subject to any other protection. Plaintiffs argue that the Protective Orders allow for use of the matters in the "action" broadly, and under Louisiana law, an "action, includes "all claims that arise from the common nucleus of operative facts."[95] Plaintiffs aver that this litigation involves the same facts and

---

[92] *Id.* at p. 20 (citing *Achian, Inc. v. Leemon Family LLC*, 25 A.2d 800, 803 n. 10 (Del. Ch. 2011)).

[93] *Id.* at p. 21.

[94] *Id.*

[95] *Id.* at pp. 21-22 (citing *Westerman v. State Farm Mut. Ins. Co.*, 2001-2159 (La. App. 1 Cir. 9/27/02); 834 So. 2d 445, 448).

parties as in the CDC Litigation and the additional presence of Lloyd's as a defendant here does not change that fact.[96]

Alternatively, Plaintiffs contend that injunctive relief is not appropriate here. While Plaintiffs dispute that any privilege or other protection exists to prevent the use of the subject communications, Plaintiffs also claim, that even if Defendants are correct, "they overreach in the form of relief sought," and cite no case to "support this form of broad injunctive relief."[97] Plaintiffs further note that sealing documents is disfavored within the Fifth Circuit and that therefore this Court should "tread cautiously" when considering whether to take the more severe steps of the injunctive relief requested.[98]

## C. Defendants' Reply

In reply, Defendants argue that the judge in the CDC Litigation already determined that Safeguard and MSREA had a common legal interest in the insurance claims (in the Katrina or Insurance Litigation), and therefore these communications remain privileged and subject to the Privilege Orders and applicable ethical rules.[99] Defendants also refute that Romani's mention of outside business interests of MSREA to outside counsel in reference to Safeguard's Insurance Litigation vitiated their privilege, because "where a communication is primarily legal in nature, the mere mention of business interests does not abrogate the attorney-client privilege.[100]

---

[96] *Id.* at p. 22.

[97] *Id.* at p. 23.

[98] *Id.* at p. 24.

[99] Rec. Doc. 75 at p. 3.

[100] *Id.* at p. 4 (citing *In Re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d 89, 798-99 (E.D. La. 2007)).

Further, Defendants claim that Plaintiffs' position that the communications are not covered by the Privilege Order is "contradicted by the plain terms of the Privilege Order."[101] Defendants claim that "the substantial majority of the communications referenced in this motion were indisputably produced by the Morgan Stanley Parties in the CDC Litigation pursuant to the Privilege Order."[102] Moreover, Defendants aver that even if Plaintiffs received "secret copies" in another way, once the communications were produced in the CDC Litigation, the documents became restricted by the Privilege Order.[103] Defendants also dispute Plaintiffs' argument that the Privilege Order allows for the use of the communications in similar litigation, because by its terms it limits the use to discrete actions.[104] Defendants also note that Plaintiffs could have sought permission from the judge in CDC Litigation to use this material in this litigation, as prescribed in the Privilege Order, but instead utilized "self help" and unilaterally decided that it did not apply here.[105]

In addition, Defendants maintain that no exception to the attorney-client privilege vitiates this protection. Defendants contend that the crime-fraud exception does not apply because "mere allegations of fraud" are insufficient, and one must prove by a preponderance of the evidence that it applies.[106] Further, Defendants note that for this exception to apply, it must be shown that the

---

[101] *Id.* at p. 5.

[102] *Id.*

[103] *Id.*

[104] *Id.* at pp. 5-6.

[105] *Id.* at p. 6.

[106] *Id.* at p. 7 (citing *Ward v. Succession of Freeman*, 854 F.2d 780, 789-90 (5th Cir. 1988)).

communications were made to guide or assist the fraud, and that Plaintiffs have not alleged that the communications at issue were made to Safeguard's outside counsel for such purposes.[107]

Further, Defendants aver that the common interest exception does not apply because they "are seeking to use privileged communications in a broader dispute [than the CDC Litigation] among parties not included on the original privileged communications."[108] "As a threshold issue," Defendants claim that Plaintiffs have not established that there is a common interest with Safeguard and MSREA "simply by virtue of Plaintiffs' role[s] as members and officers of Safeguard."[109] Defendants note that other courts have held that members of an LLC do not share in the company's privilege."[110] However, Defendants argue that even if they shared a common interest privilege with Safeguard and/or the Morgan Stanley Parties, none of them shared such interest with Lloyd's, and therefore the exception does not apply in this action.[111]

Defendants also refute Plaintiffs' contention that they waived the privilege when they were employees of Safeguard by sharing the communications with their outside counsel in the Katrina Litigation. More specifically, Defendants refute Plaintiffs' argument that Roch and others effectively waived any privilege while still a part of Safeguard, because "[Plainitffs] admit they were acting in their own self interest when they secretly forwarded Safeguard's privileged communications to third parties ... [and] the Supreme Court has held [that] such self-serving conduct by a company's

---

[107] *Id.* (citing *Hyde Constr. Co. v. Koehring Co.*, 455 F.2d 337, 342 (5th Cir. 1972)).

[108] *Id.* at p. 8.

[109] *Id.*

[110] *Id.* (citing *Montgomery v. eTreppid Techs., LLC,* 548 F.Supp. 2d 1175, 1183 (D. Nev. 2008)).

[111] *Id.* at pp. 8-9 (citing *Garner,* 430 F.2d at 1103).

employees does not qualify as a waiver of the company's privilege."[112] Moreover, Defendants argue that case law recognizes that under the common interest rule, waiver of the privilege requires the consent of all parties who share the privilege."[113]

### D. Plaintiffs' Supplemental Memorandum

Plaintiffs reiterate that in the communications at issue, MSREA "was ***not*** acting within this common interest, but was indeed acting from a ***conflict of interest*** with Safeguard."[114] Accordingly, Plaintiffs argue that Defendants ignore that principals of Plaintiffs were participants in the communications, and therefore had possession of them, and as such, it was proper to send them to outside counsel when those communications evidenced a conflict of interest affecting Safeguard and its members.[115] Further, Plaintiffs argue that despite Defendants' assertion that communications between MSREA's counsel and Safeguard's counsel were privileged because they had a common-interest in those discussions, "no common interest that may have existed could supplant the undisputed provisions of the Safeguard LLC Agreement that vested sole authority to administer the business affairs of Safeguard – including exercising the privilege and protecting the company and its members from Morgan Stanley's conflict of interest – in BCR."[116]

In addition, Plaintiffs argue that Defendants ignore key provisions of the Protective/Privilege Order. First, the Protective Order expressly states that it "shall not restrict the use of documents or

---

[112] *Id.* at p. 9 (citing *Weintraub*, 471 U.S. at 348).

[113] *Id.* at p. 10 (citing *Killebrew v. City of Greenwood*, No. 95-244, 1997 WL 208140, at *2 (N.D. Miss. Apr. 11, 1997)).

[114] Rec. Doc. 81 at p. 4 (emphasis in original).

[115] *Id.* at pp. 5-6.

[116] *Id.* at p. 6.

information obtained outside of this action."[117] Second, Plaintiffs note that the Protective Order states that this material may be used in "this action," which they interpret broadly, and claim lists two specific cases but also contains the language "including but not limited," which Plaintiffs argue permits the use of the challenged communications in this action.[118]

Finally, Plaintiffs aver that Defendants have "ignored the applicable law" regarding whether certain exceptions to privilege would apply in this matter. While Defendants urge that "mere allegations of fraud" cannot trigger the fraud exception, Plaintiffs claim that they have "provided more than 200 paragraphs of allegations establishing a detailed pattern of fraud and racketeering activity."[119] Regarding the common interest exception, Plaintiffs maintain their position that Defendants continue to cite cases "from the corporate context, or regarding non-Delaware LLC's, ignoring the plainly applicable analysis from the Fifth Circuit in *Garner v. Wolfinbarger.*"[120]

### IV. Law and Analysis for Injunctive Relief Request

Defendants have raised two separate grounds in their motion for injunctive relief which seeks to prohibit the use of certain allegedly privileged information. First, Defendants claim that information produced in the CDC Litigation pursuant to the Privilege Orders is expressly forbidden from being used in any other action absent an order from the judge in the CDC Litigation. Second, Defendants aver that some information, while not disclosed in the CDC Litigation and therefore not necessarily subject to the Protective Orders, is nonetheless prohibited from use here because it is

---

[117] *Id.* at p. 7.

[118] *Id.* at pp. 7-8.

[119] *Id.* at p. 9.

[120] *Id.*

privileged.[121] The Court will address both classes of information and then determine if Defendants are entitled to any or all of the injunctive relief they seek.

## A. *Applicability and Scope of Protective Orders*

As noted above, Defendants claim that the Protective Orders issued in the CDC Litigation contractually bind the parties in this action and prohibit the use of the objected to material here. The Protective Orders have several relevant provisions. First, the September 2009 Protective Order states that "Except as provided for in paragraph 16 of this Order, Confidential Discovery Material in this litigation shall not be used for any purpose whatsoever other than the prosecution and defense of this action or any appeal therefrom."[122] "Confidential" and "Discovery Material" are both defined in the order and no party has raised arguments that the challenged information would not satisfy these definitions.[123] The exception referenced in paragraph 16 does not apply here.[124] Further, "this action" is also defined:

> "This action," for purposes of this Protective Order shall include the captioned action in Civil District Court [CDC Action] for the Parish of Orleans, docket number 2009-4705("the Louisiana Action"), as well as any action the prosecution of which the Court in the Louisiana Action has enjoined, including but not limited to the action filed in the Delaware Court of Chancery and assigned docket number 4594-VCS and

---

[121] *See* Rec. Doc. 26 at pp. 1-2.

[122] Rec. Doc. 52-2 at p. 132, ¶ 4.

[123] *See id.* at ¶¶ 1-2.

[124] Paragraph 16 states:

> In the event a party produces two or more identical or substantially identical copies of a document or other material, and any such copy is designated Confidential, while other copies are not so designated, all such identical or substantially identical documents or other materials shall be treated as Confidential, to the extent the Producing Party notifies the parties of the existence and bates numbers or other identifying information of such non-designated copies. *Id.* at ¶ 16.

the action filed in the Delaware Court of Chancery and assigned docket number 4712-VCS.[125]

The February 2010 protective order references the same three actions, referring to them at "the Litigations," and states that "The parties shall not use the Privileged Material for any purpose other than the Litigations absent further order of this Court."[126]

Plaintiffs have argued that the language in the September 2009 Protective Order restricting use of certain material to "this action" does not apply to this matter, because "this action" is defined broadly as a function of the use of the "including but not limited" language, and therefore encompasses more than that which is expressly listed.[127] The Court finds this provision very clear on its face, and so is not persuaded by Plaintiffs' strained expansion of this order's clear language on this issue.

Under both Fifth Circuit and Louisiana precedent, the interpretation of an unambiguous contract is a matter of law to be decided by courts.[128] A district court's determination of non-ambiguity is also a question of law, which an appellate court will review *de novo*.[129] While the parties dispute the significance of this provision, neither party has argued that the Protective Order employs ambiguous language. Further, "'[c]ontracts are not rendered ambiguous by the mere fact

---

[125] *Id.* at ¶ 8(j).

[126] Rec. Doc. 26-2 at p. 9, ¶¶ 1, 7(h).

[127] *See* Rec. Doc. 52 at pp.12-13.

[128] *Strachan Shipping Co. c. Dresser Indus., Inc.*, 701 F.2d 483, 486 (5th Cir. 1983); *Sims v. Mulhearn Funeral Home, Inc.*, 2007-0054 (La. 5/22/07); 956 So. 2d 583, 590.

[129] *S. Natural Gas Co. v. Pursue Energy*, 781 F.2d 1079, 1081 (5th Cir. 1986).

that the parties do not agree upon their proper construction.'"[130] "[I]n determining the meaning of a writing, the court is required to look to all operative usages and all relevant circumstances other than oral statements by the parties of what they intended it to mean."[131] For the reasons explained below, after reviewing the passage and considering it in context of the Protective Order as a whole, the Court determines that the passage is clear and unambiguous, and therefore its interpretation is a matter of law for this Court to decide.[132]

      Plaintiffs' proposed interpretation of this stipulation among the parties is problematic for several reasons. The September 2009 Protective Order limits use of the privileged material to "this action."[133] Then, in defining "this action," the order includes the CDC Litigation, "as well as any action the prosecution of which the Court in the Louisiana Action has enjoined, including but not limited to the action filed in the Delaware Court of Chancery and assigned docket number 4594-VCS and the action filed in the Delaware Court of Chancery and assigned docket number 4712-VCS."[134] Plaintiffs attempt to seize upon the "including but not limited to" language as some indication that the order intends "this action" to apply much more broadly and allow for use of the privileged materials in any number of proceedings. Specifically, they argue, that because they have brought the claims now before this federal court, which were dismissed by the state court, that this federal action is considered "this action" as used in the Privilege Order issued by the state court

---

[130] *Freeman v. Continental Gin Co.*, 381 F.2d 459, 465 (5th Cir. 1967) (quoting *Whiting Stoker Co. v. Chicago Stoker Corp.*, 171 F.2d 248, 250-51 (7th Cir. 1948)).

[131] *Id.* (internal quotation marks omitted).

[132] *See id.* ("The trial court found that 'the language of the controlling documents now before this court are clear and unambiguous.' We agree.").

[133] Rec. Doc. 52-2 at p. 132, ¶ 4.

[134] *Id.* at ¶ 8(j).

judge. However, a plain reading of this clause[135] makes clear that the section refers to all actions the court enjoined, which includes the two Delaware actions explicitly named, but also allows for the possibility of other unnamed proceedings the judge in the CDC Litigation enjoined, but did not name, in the order. The judge in the CDC Litigation did not, and could not, enjoin this action at any time. A straightforward reading of this provision demonstrates that it was not the intent of the parties to open the definition of "this action" to include any subsequent or collateral proceeding. Such a construction would negate the order's express restriction that the privileged material "in this litigation shall not be used for any purpose whatsoever other than the prosecution and defense of this action or any appeal therefrom," and would therefore be contrary to the basic rules of contract interpretation.[136] As such, the Court finds that the Protective Orders clearly restrict the use of the objected to material that was disclosed within the CDC Litigation to that action and the cases that judge previously enjoined, and cannot be used here.

As yet another rationale to use this information, Plaintiffs claim that the September 2009 Order does not restrict the use of information obtained outside of this action, and that they received much of this information independently from Roch, not through discovery in the CDC Litigation.[137] Specifically, the September 2009 Order states, in pertinent part:

> Following the termination of this action, any document that may be maintained pursuant to paragraph 15 of this Order may be used solely to the extent necessary for

---

[135] *See Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC*, 2012-2055 (La. 3/19/13); 112 So. 3d 187, 192 ("Most importantly, a contract must be interpreted in a common-sense fashion, according to the words of the contract their common and usual significance.") (internal quotation marks omitted).

[136] *See Computalog U.S.A., Inc. v. Mallard Bay Drilling, Inc.*, 21 F.Supp. 2d 620, 624 (E.D. La. 1998) ("Each provision of a contract must be read in light of others so as to give each the meaning reflected by the contract as a whole." (citing *Aw. Eng'g Co. v. Cajun Elec. Power Co-op, Inc.*, 915 F.2d 972 (5th Cir. 1990)); *see also Clovelly Oil Co., LLC*, 112 So. 3d at 192 (same).

[137] Rec. Doc. 52 at 13.

> counsel to defend its conduct in this action if such conduct is challenged in a collateral action or pending proceeding. **This order shall not restrict the use of documents or information obtained outside this action or alter or conflict with any order entered by another court.** Nothing contained in this Order shall be construed to impose discovery obligations on a person or entity in this action.[138]

In response, Defendants argue that even if Plaintiffs obtained this information from a source other than discovery in the CDC Litigation, "pursuant to the Privilege Order, Plaintiffs' use of those documents became restricted by the terms of the order."[139]

Contracts have the effect of law for the parties and the interpretation of a contract is a determination of the common intent of the parties.[140] "The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself."[141] Moreover, "even when the language of the contract is clear, courts should refrain from construing the contract in such a manner as to lead to absurd consequences."[142]

Again, Plaintiffs employ an impracticable interpretation of the Protective Orders. As outlined above, the September 2009 Order states that the subject disclosed information "shall not be used for any purpose whatsoever other than the prosecution and defense of this action or any appeal therefrom,"[143] without any qualification regarding how the information was obtained. Moreover, Plaintiffs' reading would undermine the clear purpose and intent of the parties evidenced by the documents themselves. As the title of the Protective Orders implies, they were intended to protect

---

[138] Rec. Doc. 52-2 at p. 132, ¶ 5 (emphasis added).

[139] Rec. Doc. 75 at p. 5.

[140] *Clovely Oil Co., LLC*, 112 So. 3d at 192.

[141] *Id.*

[142] *Id.*; *see also In re Liljeberg Enters., Inc.*, 304 F.3d 410, 440 (5th Cir. 2002).

[143] Rec. Doc. 52-2 at p. 132, ¶ 4.

the parties from the use of certain information outside of a discreet number of ongoing actions. While this information was disclosed to Plaintiffs in the CDC Litigation, Plaintiffs contend that they found an independent source for the same information in this action, and therefore should be allowed to use it here. However, such an interpretation would erode much of the protection imbued within the Protective Orders, and allow Plaintiffs to use the information obtained in the CDC Litigation – which they know exists because of the prior discovery – to their benefit in this action as long as they can find some other source. Considering all the information provided to this Court, it finds such an interpretation unsupportable. Moreover, considering Plaintiffs know, at a minimum, that the information was also produced subject to the Privilege Orders in the CDC Litigation, they were bound by the orders to seek approval from the judge in the CDC Litigation before using the information here.

To put it another way, construing the Protective Orders as Plaintiffs suggest and allowing them to use this previously disclosed information based on their assertion that for this action they were able to obtain the information through another source, would undermine the clear intent of the Protective Orders. The Fifth Circuit has recognized that there is "no authority permitting a party to flout a state court protective order simply because documents in a state action might prove useful in a separate federal action.[144] In context, and considering the other provisions, the September 2009 Order's language that, "[t]his order shall not restrict the use of documents or information obtained outside this action or alter or conflict with any order entered by another court" must refer to material that may be related, but was ***not*** actually disclosed pursuant to the Protective Orders. Any other interpretation would produce absurd results and undermine the intent of the parties and the

---

[144] *Washington v. New Orleans City*, 424 F. App'x 307, 311-12 (5th Cir. 2011).

Protective Orders themselves. Moreover, the February 2010 order clearly acknowledges that Roch received many of these documents while with BCR, who was a member of Safeguard,[145] and therefore it would be unreasonable to assume that the Protective Orders did not intend to cover material he received in that capacity, as Plaintiffs here now suggest.

As this Court finds that the Privilege Orders do govern disclosure of the subject material in this action, for Plaintiffs to use such information, they were required by the terms of the Protective Orders, to obtain an order from the judge in the CDC Litigation permitting them to do so.[146] Plaintiffs do not contend that they have received such an order. Therefore, the Court finds that the use of any privileged or confidential information in this action that was produced in the CDC Litigation pursuant to the Protective Orders without prior approval by the CDC Litigation judge, would be in violation of the Protective Orders, and therefore is impermissible here, even if the information could be obtained from a source other than the CDC Litigation.

**B. Whether Certain Information Not Disclosed in the CDC Litigation Pursuant to the Protective Orders is Nonetheless Protected by a Recognized Privilege**

As noted in the parties' arguments section,[147] Defendants claim that many documents referenced by Plaintiffs in the Complaint are protected by the attorney-client and/or work-product privilege. Meanwhile, Plaintiffs claim that Defendants have not met their burden to demonstrate that any privilege exists, and also argue that any privilege may have been waived in several ways.

---

[145] Rec. Doc. 26-2 at p. 9, ¶ 2.

[146] *Id.* at ¶ 7(h).

[147] *See supra* Part III.

### 1. Existence of a Privilege

The attorney-client privilege protects communications made in confidence by a client to his lawyer for the purpose of obtaining legal advice.[148] The party invoking the attorney-client privilege has the burden of demonstrating its applicability.[149] "The application of the attorney-client privilege is a question of fact, to be determined in the light of the purpose of the privilege and guided by judicial precedents."[150] A district court's factual findings in this regard will be reviewed under the clearly erroneous standard, but its review and application of controlling law is reviewed *de novo*.[151]

Here, Defendants have identified twenty-two paragraphs they contend improperly reference privileged material,[152] and attached as "Exhibit A" a description of the material referenced, who it was between, and why they believe it is subject to attorney-client privilege.[153] Upon this Court's review of the subject paragraphs and Exhibit A, it appears the paragraphs complained of concern references to material between in-house counsel and outside-counsel or between counsel and their clients, via email and telephone. A district court does not err in declining to review actual emails referenced in a privilege log, and may instead credit descriptions contained in a log as accurate, while further determining that a party has met its initial burden to establish the existence of a

---

[148] *King v. Univ. Healthcae Sys., L.C.*, 645 F.3d 713, 720 (5th Cir. 2011).

[149] *Id.* at 721 (citing *Hodges, Grant & Kaufman v. United States*, 768 F.2d 719, 720 (5th Cir. 1985)).

[150] *United States v. Neal*, 27 F.3d 1035, 1048 (5th Cir. 1994) (internal quotation marks and citations omitted).

[151] *Id.*

[152] *See* Rec. Doc. 26-1 at p. 9.

[153] *See* Exhibit A, Rec. Doc. 26-4.

33

privilege.[154]  The Court notes that Plaintiffs have not challenged the descriptions of the communications provided in Defendants' Exhibit A.

Plaintiffs have argued that these communications are not between counsel and their clients because MSREA and Safeguard are separate companies, so communication between Safeguard's counsel and a representative of MSREA is not privileged.[155]  Additionally, Plaintiffs contend that from the nature of the conversations it is clear that MSREA's counsel was working in its favor, not Safeguard's, and therefore, there is no privilege. However, as Defendants noted, the February 2010 Protective Order contemplated this and stated:

> Because MSREA is involved in the management of Safeguard, including with respect to Safeguard's Katrina litigation, and because Safeguard's insurance coverage is obtained through MSREA, Safeguard and defendants share a common legal interest in Safeguard's insurance claims. As such, their communication with each other do not waive any privilege to which those communications would otherwise be entitled. La. Code of Evid. art. 506(B)(3).[156]

As such, the parties have already agreed that these communications were entitled to privilege. Additionally, courts have recognized that "[u]nder the common interest rule, waiver of the privilege requires the consent of all parties who share the privilege."[157]

## 2. Exceptions to Any Privilege

Next, Plaintiffs claim that even if the communications were privileged, said privilege was vitiated because MSREA's "communications were in furtherance of predicate acts of conspiracy to

---

[154] *See King*, 656 F.3d at 721.

[155] Rec. Doc. 52 at p. 16.

[156] Rec. Doc. 26-2 at p. 10, ¶ 4.

[157] *Killenrew*, 1997 WL 208140, at *2 (citing *John Morrell & Co. v. Local Union 304A*, 913 F.2d 544, 556 (8th Cir. 1990)).

commit fraud, [and therefore] fall squarely within the fraud exception to privilege."[158] "The general rule is that communications made by a client to his attorney during or before the commission of a crime or fraud for the purpose of being guided or assisted in its commission are not privileged."[159] "The party challenging the privilege [under the crime-fraud exception] must (1) make an independent prima facie case that a crime has been committed, and (2) then demonstrate that the privileged information bears a relationship to the alleged crime or fraud.[160] Mere allegations of fraud are not sufficient to break the privilege.[161] In support of this exception, Plaintiffs argue that they have "provided more than 200 paragraphs of *allegations* establishing a detailed pattern of fraud and racketeering activity," coupled with Roch's affidavit and certain other documentation.[162] However, Plaintiffs fail to include any citation to the over 150 pages of documents or provide an explanation as to how these documents specifically support their contentions here that the communications were made in furtherance of the alleged crime or fraud. As such, the Court finds that Plaintiffs have not met their burden to vitiate Defendants' privilege.

Finally, Plaintiffs oppose the pending motion, claiming that any surviving privilege cannot be used defensively here because it was held jointly between clients with a common interest in the Insurance or Katrina Litigation. Plaintiffs rely on the Fifth Circuit's decision in *Garner*, where the court stated that "[i]n many situations in which the same attorney acts for two or more parties having

---

[158] Rec. Doc. 52 at p. 17.

[159] *Hyde Constr. Co.*, 455 F.2d at 342.

[160] *Ward*, 854 F.2d at 790.

[161] *Id.*

[162] *See* Rec. Doc. 81 at p. 9 (emphasis added); *see also* Rec. Doc. 52-1 (Roch's Affidavit); Rec. Doc. 52-2 (various documents).

a common interest, neither party may exercise the privilege in a subsequent controversy with the other. This is true even where the attorney acts jointly for two or more persons having no formalized business arrangement between them."[163] The Fifth Circuit noted that this exception applies to partners, makers of mutual wills and joint trustors, insured and insurer in an automobile death action, "and many others."[164] Moreover, Plaintiffs argue that Defendants reliance on the Supreme Court's decision in *Commodity Futures Trading Commission v. Weintraub*,[165] is misplaced because it is a decision "in the corporate context," to assert that once a change in control of a corporation occurs, a former corporate representative no longer is empowered to exercise the privilege. They argue the case is inapplicable here, because Safeguard is a Delaware LLC, and the Delaware LLC Act is based on the Limited Partnership Act.[166] Therefore, Plaintiffs contend that the exception recognized in *Garner* should apply here to allow them to defeat the privilege and use the communications in this matter. To put it another way, Plaintiffs assert that a Delaware limited liability company is analogous to a partnership, and therefore, the exception to privilege recognized by the Fifth Circuit in *Garner* should apply, and the Supreme Court's decision in *Weintraub* is inapplicable.

In *Weintraub*, the case Defendants have relied upon to maintain privilege over the material, the Supreme Court recognized that:

> The administration of the attorney-client privilege in the case of corporations, however, presents special problems. ***As an inanimate entity, a corporation must act through agents. A corporation cannot speak directly to its lawyers. Similarly, it cannot directly waive the privilege when disclosure is in its best interest. Each of***

---

[163] 430 F.2d at 1103.

[164] *Id.*

[165] 471 U.S. 343.

[166] Rec. Doc. 52 at p. 19.

36

> ***these actions must necessarily be undertaken by individuals empowered to act on behalf of the corporation.***[167]

Therefore "the power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors," but "[t]he managers, of course, must exercise the privilege in a manner consistent with their fiduciary duty to act in the best interests of the corporation and not of themselves as individuals."[168] Here, if Plaintiffs' arguments are accepted as true, Roch, in waiving the privilege, was acting in his own self interest, or that of a party other than Safeguard, when he disclosed the information to outside counsel. Moreover, "when control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well," and "[d]isplaced managers may not assert the privilege over the wishes of current managers, even as to statements that the former might have made to counsel concerning matters within the scope of their corporate duties."[169] Therefore, Roch, and others, would not be able to waive the privilege after he, or they, were replaced.

Plaintiffs' argument that *Weintraub* is distinguishable because in that case the Supreme Court announced rules relative to corporations, whereas here the relevant entity, Safeguard, is a Delaware limited liability company, is not persuasive. The *Weintraub* court's logic, which held that former officers of corporations could not control any privilege once they left, relied upon the fact that a corporation is a juridical entity that must operate through agents who have been empowered to act on its behalf.[170] The same is true of Delaware limited liability companies. Delaware courts have

---

[167] 471 U.S. at 348 (emphasis added).

[168] *Id.* at 348-49.

[169] *Id.* at 349.

[170] *Id.* at 348.

37

recognized that limited liability companies have a very similar governing structure to corporations, which act through their board of directors and officers; Delaware limited liability companies, like Safeguard, can be member-managed, where the actual owners operate the company, or they can be manager-managed, where non-owners are empowered to manage and control the entity, like the officers or board of directors of corporations: "The manager of an LLC—which is in plain words a limited liability 'company' *having many of the features of a corporation* —easily fits the definition of a fiduciary. The manager of an LLC has more than an arms-length, contractual relationship with the members of the LLC. Rather, *the manager is vested with discretionary power to manage the business of the LLC*."[171]

In contrast, by default, partners of a partnership may act and bind the partnership.[172] Moreover, the default rule for partnerships is that the death of a partner or a partner's decision to cease to participate in the partnership dissolves the entity, unless a partnership agreement states otherwise.[173] Therefore, in the absence of a partnership agreement stating otherwise, after a partner leaves a partnership, any privilege could not be retained or controlled by the partnership, because it would cease to exist. The same is not true if a member sells his interest in a limited liability company or a non-member manager leaves his position, because the entity continues to exist and can exercise its privilege through other empowered agents.[174] Like a corporation, a limited liability

---

[171] *See, e.g., Auriga Capital Corp. v. Gatz Props.*, 40 A.3d 839, 850-51 (Del. Ch. 2012)(footnotes omitted) (emphasis added).

[172] *See Bell v. Morrison*, 26 U.S. 351, 352 (1828); *see also Rudnitsky v. Rudnitsky*, No. 17446, 2000 WL 1724234, at *5 (Del. Ch. Nov. 14, 2000) (citing 6 Del. C. § 1509).

[173] *See Burwell v. Cawood*, 43 U.S. 560, 576 (1844); *see also Lincoln v. Orthwein*, 120 F. 880, 883 (5th Cir. 1903).

[174] *Achain, Inc. v. Leemon Family LLC*, 25 A.3d 800, 805-06 (Del. Ch. 2011).

company may continue to exist and exercise its privilege to its benefit after a former agent who was empowered to act on its behalf leaves. For these reasons, the Court finds that the Fifth Circuit's exception in *Garner*, which applies to partnerships, is not relevant to Safeguard as a Delaware limited liability company. As explained above, the governing structure of a Delaware limited liability company is more analogous to that of a corporation, and as such the rule in *Weintraub* prohibiting the control of a corporation's privilege by old management likewise applies to Safeguard, a Delaware limited liability company.

Because of the relevant similarities highlighted above between corporations and limited liability companies, this Court finds that the *Weintraub* court's instruction on attorney-client privilege is relevant here, and the exception recognized in *Garner* is inapplicable. Therefore, Roch did not have the authority to exercise Safeguard's privilege once BCR sold its interest in Safeguard. Moreover, even if Roch "waived" this privilege while BCR was still a member of Safeguard, as Plaintiffs contend, his exercise of the privilege was not permissible, because it was not "in a manner consistent with [his] fiduciary duty to act in the best interests of the [LLC]" and instead was in furtherance of his and/or BCR's interests.[175] Moreover, for many of the same reasons, this Court finds that the treatment of Safeguard's privilege is not susceptible to the "common interest" exception discussed in *Garner*. As the Court has found that this information is protected, the Court will now address whether the injunctive relief sought by Defendants is appropriate.

## C. Injunctive Relief

As noted above, to receive a preliminary injunction, a party must show, (1) a substantial likelihood of success on the merits; (2) a substantial threat that they will suffer irreparable injury if

---

[175] *Weintraub*, 471 U.S. at 348-49.

the injunction is not issued; (3) that the threatened injury to them outweighs any damage the injunction might cause to the non-movant; and (4) that the injunction will not disserve the public interest.[176] "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."[177] Additionally, to obtain a permanent injunction, a party must show "'(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'"[178] A party against whom injunctive relief is sought is entitled to notice before a court rules on the appropriateness of such relief.[179] This notice requirement "necessarily requires that the party opposing the [injunctive relief] has the opportunity to be heard and to present evidence."[180] With respect to the pending motion and Defendants' request for injunctive relief, Plaintiffs have been afforded numerous opportunities to be heard on this issue in their briefings and to present affidavits and other evidence in support of their position. Therefore, the Court finds that this notice requirement has been satisfied. Ultimately, a district court's decision to grant or deny a preliminary or permanent injunction is an act of

---

[176] *Duncanville Indep. Sch. Dist.*, 994 F.2d at 163.

[177] Fed. R. Civ. P. 65(a); *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

[178] *eBay*, 547 U.S. at 391.

[179] Fed. R. Civ. P. 65(a)(1).

[180] *Harris Cnty., Tex. v. Carmax Auto Superstores*, 177 F.3d 306, 325-26 (5th Cir. 1999) (citing *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers, Local No. 70*, 415 U.S. 423, 434 n.7 (1974)).

"equitable discretion" and is reviewable for abuse of discretion.[181] Defendants' seek both forms of relief, and the Court will therefore address each of them in turn.

## 1. Preliminary Injunction

### a. Substantial Likelihood of Success on the Merits

This Court has already discussed at length why the objected to material is protected and privileged, and why its use in this litigation would violate either the Protective Orders and/or laws regarding privilege.[182] Therefore, the Court finds that Defendants satisfy this element.

### b. Substantial Threat of Irreparable Harm

The Fifth Circuit has expressly recognized that disclosure of privileged material could cause irreparable harm.[183] While this case does not involve Defendants' forcing disclosure, as Plaintiffs appear to already be in possession of the information through discovery in the CDC Litigation or Roch, the harm that would come from the use of such information in this lawsuit is the same. Moreover, the use of this information in this action would be in contravention of Defendants' rights as established in the Protective Orders. "The purpose of a preliminary injunction is to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits."[184] If Plaintiffs are able to use evidence or information in this suit that is privileged and has previously been agreed to by the parties to not be used in such a manner, ths Court would be unable

---

[181] *eBay*, 547 U.S. at 391; *Janvey v. Alguire*, 647 F.3d 585, 591-92 (5th Cir. 2011).

[182] *See supra* Part IV.A-B.

[183] *In re Burlington N., Inc.*, 822 F.2d at 822-23.

[184] *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 627 (5th Cir. 1985) (citing *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974)).

to render a meaningful decision on the merits. Therefore, the Court finds that this element is satisfied as well.

### c. Threatened Injury to Defendants Outweighs Any Damage that Might Come to Plaintiffs

While the grant of a preliminary injunction may thwart many of Plaintiffs' claims and narrow the issues, as explained above, this is necessary as per the Protective Orders and controlling law regarding privilege. Moreover, as Defendants note, some of the objected to information involves the ongoing Katrina Litigation and strategy therein, against Lloyd's, and therefore the disclosure of this information would certainly be harmful to Defendants. As such, the Court finds that the threatened injury to Defendants is outweighed by any damage that might come to Plaintiffs.

### d. Would an Injunction Disserve the Public Interest

Although the Court recognizes that the public's interest in having a public record in this matter would be disserved by granting the injunction and prohibiting Plaintiffs from using or referencing information that is restricted under the Protective Orders and/or by privilege, other sections of this Court have acknowledged, and for the purposes of this decision this Court agrees, that protecting privilege "preserve[s] the integrity" of judicial proceedings.[185] As such, and upon balancing these interests, this Court finds that this final element is satisfied, and therefore, upon considering all the aforementioned factors, Defendants are entitled to a preliminary injunction "enjoining Plaintiffs from using or disclosing in this action communications among the Morgan Stanley Parties and their counsel that are subject to the attorney-client privilege and the attorney

---

[185] *In re Shell Oil Refinery*, 143 F.R.D. 105, 109 (E.D. La. 1992).

42

work-product doctrine," whether they were disclosed in the CDC Litigation pursuant to the Privilege Orders or were produced by Roch to be used in this litigation.

### e. Security

Under Federal Rule of Civil Procedure 65(c), a district court may grant a preliminary injunction  "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Neither Plaintiffs nor Defendants have addressed the issue of security. However, the Fifth Circuit has acknowledged that the amount of the security is within the discretion of the district court, who can elect to impose no security at all.[186] Again, Plaintiffs have made no request for security if this Court were to order a preliminary injunction. While the issuance of a preliminary injunction may affect Plaintiffs' claims in this suit, they would not be financially "damaged" by such relief, and therefore the Court finds that the Defendants are not required to furnish any security.

### 2. Permanent Injunction

"The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success."[187] On the issue of whether Plaintiffs may use the objected to material identified in this pending motion, this Court has already addressed at length why Plaintiffs may not.[188] Therefore, Defendants have not only demonstrated a likelihood of success on the merits,[189] but also

---

[186] *City of Atlanta v. Metropolitan Atlanta Rapid Transit Authority*, 636 F.2d 1084, 1094 (5th Cir. Unit B Feb. 1981) (citing *Corrigan Dispatch Co. v. Casaguzman, F.A.*, 569 F.2d 300, 303 (5th Cir. 1978)).

[187] *Amoco Prod. Co. v. Village of Gambell, AK.*, 480 U.S. 531, 546 n. 12. (1987).

[188] *See supra* Part IV.A-B.

[189] *See supra* Part IV.C.1(a).

actual success on this issue. As such, the Court finds that a permanent injunction similarly enjoining Plaintiffs from using or disclosing this material is appropriate here.

## V. Conclusion

As an initial matter, because the Redacted Complaint was placed under seal upon the filing of the pending motion, Defendants' request for reconsideration of the Court's prior order denying their motion to seal the Redacted Complaint and that the Redacted Complaint be placed under seal until the resolution of this motion, are denied as moot.[190] Moreover, for the reasons stated above, Plaintiffs are preliminarily and permanently enjoined from making any further use or disclosure of the privileged communications identified by Defendants in Exhibit A,[191] as well as any other privileged communications of the Morgan Stanley Companies.[192] Accordingly,

**IT IS HEREBY ORDERED** that Defendants' "Motion to Reconsider Motion to Seal Complaint and Motion for Preliminary and Permanent Injunction Against the Improper Use or Disclosure of Privileged Material"[193] is **DENIED IN PART** and **GRANTED IN PART**;

**IT IS FURTHER ORDERED** that Defendants' request for this Court to reconsider its order denying Defendants' motion to file the Redacted Complaint under seal is **DENIED AS MOOT**;

**IT IS FURTHER ORDERED** that Defendants' request for a preliminary and permanent injunction is **GRANTED** and Plaintiffs are enjoined from making any further use or disclosure in this litigation of the privileged communications identified by Defendants in Exhibit A,[194] as well as

---

[190] *See supra* Part II.B.

[191] Rec. Doc. 26-4.

[192] *See supra* Part IV.

[193] Rec. Doc. 26.

[194] Rec. Doc. 26-4.

any other privileged communications of the Morgan Stanley Companies without prior approval from the judge in the CDC Litigation that effected the Privilege Orders;

**IT IS FURTHER ORDERED** that Plaintiffs are granted leave to amend the Complaint within thirty (30) days from issuance of this order to remove all references and use of such material as described above, unless and until approval to use is granted in the CDC Litigation.

**NEW ORLEANS, LOUISIANA**, this __15th__ day of August, 2013.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**