# IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

————————————————

No. 14-31068

————————————————

D.C. Docket No. 2:13-CV-66

United States Court of Appeals
Fifth Circuit

**FILED**

June 2, 2015

Lyle W. Cayce
Clerk

BCR SAFEGUARD HOLDING, L.L.C.; JAC SAFEGUARD HOLDING, L.L.C.; SAFEGUARD DEVELOPMENT GROUP II, L.L.C.,

        *Plaintiffs - Appellants*

v.

MORGAN STANLEY REAL ESTATE ADVISOR, INCORPORATED; PPF SAFEGUARD, L.L.C.; CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON; SCOTT ALLEN BROWN,

        *Defendants - Appellees*

Appeal from the United States District Court for the
Eastern District of Louisiana, New Orleans

Before STEWART, Chief Judge, and KING and ELROD, Circuit Judges.

### J U D G M E N T

This cause was considered on the record on appeal and was argued by counsel.

It is ordered and adjudged that the judgment of the District Court is affirmed in part and reversed in part.

IT IS FURTHER ORDERED that plaintiffs-appellants pay to defendants-appellees the costs on appeal to be taxed by the Clerk of this Court.

**Certified as a true copy and issued
as the mandate on Jul 21, 2015**

**Attest:** *Lyle W. Cayce*
**Clerk, U.S. Court of Appeals, Fifth Circuit**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

--------

No. 14-31068

--------

United States Court of Appeals
Fifth Circuit

**FILED**

June 2, 2015

Lyle W. Cayce
Clerk

BCR SAFEGUARD HOLDING, L.L.C.; JAC SAFEGUARD HOLDING,
L.L.C.; SAFEGUARD DEVELOPMENT GROUP II, L.L.C.,

        Plaintiffs - Appellants

v.

MORGAN STANLEY REAL ESTATE ADVISOR, INCORPORATED; PPF
SAFEGUARD, L.L.C.; CERTAIN UNDERWRITERS AT LLOYD'S OF
LONDON; SCOTT ALLEN BROWN,

        Defendants - Appellees

--------

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:13-CV-66

--------

Before STEWART, Chief Judge, and KING and ELROD, Circuit Judges.

KING, Circuit Judge:*

    Appellants, various entities that previously owned a stake in a self-storage company, Safeguard, LLC, brought this suit alleging RICO and related state law claims against: Appellee PPF Safeguard, LLC, which currently wholly owns Safeguard; Appellee Morgan Stanley Real Estate Advisor, Inc.,

--------

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-31068

which owns and controls PPF; and Appellees certain underwriters at Lloyd's of London, which provided insurance coverage for Safeguard.

After suffering millions of dollars in damages due to Hurricane Katrina, Safeguard delegated to Morgan Stanley the role of negotiating insurance claims against Safeguard's insurers (including the Lloyd's Appellees). Appellants allege that Appellees conspired to delay the resolution of Safeguard's insurance claims and to minimize the ultimate settlement payout to Safeguard. Appellants also allege that the Lloyd's Appellees pressured Morgan Stanley to take full control of Safeguard, which Morgan Stanley ultimately accomplished when, in the midst of the insurance litigation, it directed PPF to buy out Appellants' interest in Safeguard via a buy/sell clause in Safeguard's LLC Agreement. Appellants contend that, as a result of these actions, they were denied the proceeds they were due under the insurance policies, as well as the ability to maintain an ownership stake in Safeguard. The district court dismissed Appellants' complaint, concluding under various theories that Appellants lack standing. The district court also granted an injunction barring the use and disclosure of various purportedly privileged communications relating to the insurance litigation. For the following reasons, we AFFIRM in part and REVERSE in part the judgment below.

## I.      Factual and Procedural Background

### A.    Factual Background

#### 1.    The LLC Agreement

In 1989, Bruce Roch, Jr., founded the predecessor to Safeguard, LLC, a self-storage company headquartered in New Orleans. Soon after the company's founding, Jack Chaney joined Roch and helped build the company. Roch and Chaney formed and became members in various Delaware LLCs— Plaintiffs-Appellants BCR Safeguard Holding, LLC ("BCR"), JAC Safeguard Holding, LLC ("JAC"), and Safeguard Development Group II, LLC

No. 14-31068

("Mountainside") (collectively, the "BCR Parties" or "Appellants")—which collectively owned Safeguard.

In May 2005, Defendant-Appellee Morgan Stanley Real Estate Advisor, Inc. ("Morgan Stanley") entered into an agreement to invest in Safeguard through a holding company, Defendant-Appellee PPF Safeguard, LLC ("PPF") (collectively, the "Morgan Stanley Appellees").[1]  Effective May 31, 2005, PPF and the BCR Parties entered into the Amended and Restated Limited Liability Company Agreement of Safeguard Storage Properties, LLC (the "LLC Agreement").    Pursuant to the LLC Agreement, PPF purchased an approximately 94% interest in Safeguard, with the BCR Parties maintaining an approximately 6% interest.  Roch served as Safeguard's CEO and Chaney served as Safeguard's COO until mid-2009.  Safeguard also had a four-person Management Committee, which under the LLC Agreement was required to include two members designated by BCR (Roch and Chaney) and two members designated by Morgan Stanley (John Kessler and Appellee Scott Brown).  BCR was designated the "Administrative Member" of Safeguard and was thus "in charge of all day-to-day operations," having "the sole and exclusive right, power, authority and discretion to conduct the business and affairs of [Safeguard] . . . and to do all things necessary to carry on the business of [Safeguard]."  However, "Major Decisions"—including the decision to bring suit in matters in excess of $250,000—could only be made with unanimous approval of the Management Committee.

The LLC Agreement also contains a "waterfall" provision for the distribution of Safeguard's proceeds to its members.  Under that provision, the BCR Parties were entitled to receive proceeds disproportionately high in relation to their equity interest in Safeguard.  Appellants allege that the effect

---

[1] PPF is managed by Morgan Stanley, which is PPF's sole advisor.

of the provision is that 60% of the net proceeds from any distribution event (in excess of certain priority loans made by PPF) would be distributable pro rata to all Safeguard members, but 40% of such proceeds would be distributed solely to the BCR Parties.

### 2.    Hurricane Katrina and the Insurance Litigation

Given PPF's interest in Safeguard, Morgan Stanley agreed to obtain insurance coverage for Safeguard under its property and business interruption insurance program.  Certain underwriters associated with Lloyd's of London (the "Lloyd's Appellees") were among over a dozen insurers that participated in the program.  In August 2005, due to Hurricane Katrina, Safeguard's business headquarters suffered millions of dollars in real and personal property damage.  Appellants allege that this damage also caused business interruption losses totaling in excess of $350 million, and that such losses were covered under the excess insurance policies provided by the Lloyd's Appellees. Pursuant to a decision of the Management Committee, Safeguard delegated to Morgan Stanley the role of negotiating the insurance claims with the insurers.

In August 2007, as the deadline for filing Katrina-related Louisiana insurance lawsuits approached, Appellants learned that Morgan Stanley had made little to no progress in pursuing Safeguard's claims.  After a dispute within the Management Committee—including the BCR Parties' threat of a lawsuit against the Morgan Stanley Appellees—the Committee unanimously approved the filing of a lawsuit against the insurers (the "Insurance Litigation").  Appellants allege, however, that Morgan Stanley "did not want to pursue Safeguard's insurance claim, either through settlement or litigation, in any meaningful way," given that (1) Morgan Stanley had no equity interest in Safeguard and would gain no direct proceeds from any insurance recovery; and (2) a large recovery could "jeopardize Morgan Stanley's ability to renew participation in the insurance program" by its insurers "or, at a minimum,

No. 14-31068

greatly increase the future cost of Morgan Stanley's coverage." Appellants also allege that Brown "disregarded any conflicts of interest between Safeguard, PPF, and Morgan Stanley" and "always acted to protect Morgan Stanley's interests, in violation of the duties he owed to all of the members of Safeguard."

Appellants further allege that the Lloyd's Appellees took advantage of this conflict of interest by pressuring Morgan Stanley to pursue the Insurance Litigation less aggressively. Appellants support this allegation by referencing various communications between AON (Morgan Stanley's insurance broker), Lloyd's, and Morgan Stanley. Appellants allege that, through these communications, Morgan Stanley "comfort[ed] the Insurers that they did not need to engage in serious consideration of settlement of Safeguard's claims at amounts that reflected the value of Safeguard's business interruption[] claims" and assured the insurers that "they could count on the litigation being protracted and delayed through Morgan Stanley's machinations until it could gain full control of Safeguard."

Appellants were particularly concerned that Morgan Stanley was not aggressively pursuing an approximately $350 million business interruption claim for lost revenues. On December 23, 2009, the trial court in the Insurance Litigation granted the insurers' motion for partial summary judgment, dismissing the lost business opportunity claim as too speculative as a matter of law. The trial court also determined that Safeguard could only recover for damages incurred during a limited recovery period provided for in the insurance policy. On appeal, the Louisiana Fourth Circuit Court of Appeal (the "Louisiana Court of Appeal") reinstated the lost business opportunity claim, determining that "genuine issues of material fact exist as to whether Safeguard incurred a loss of business opportunities." *Safeguard Storage Props., L.L.C. v. Donahue Favret Contractors, Inc.*, 60 So. 3d 110, 121 (La. Ct.

No. 14-31068

App. 2011).  The court affirmed, however, the trial court's ruling limiting the coverage period.  *Id.* at 123.

In October 2012, the parties settled the Insurance Litigation.  Under the Settlement and Release Agreement ("Settlement Agreement"), Safeguard released the insurers from "all past, present or future claims alleged or that could have been alleged or claimed in the [Insurance Litigation]."

### 3.    The Sale of Appellants' Interest in Safeguard

The LLC Agreement contains a Buy/Sell provision under which "either PPF or the BCR parties . . . had the right to issue a Buy/Sell 'Offer Notice' declaring the intention to either purchase or sell their interest in Safeguard from or to the other for . . . the cumulative, aggregate amount that the Notified Party or the Notifying Party, as applicable, would be entitled to receive if the Company were sold for an all-cash price."  During a 70-day "Election Period," the party receiving the "Offer Notice" may choose to either become the "Purchasing Member" or the "Non-Purchasing Member."  In other words, the party receiving the notice may choose to either sell its interest in Safeguard or purchase the portion of Safeguard which it did not already own.  A failure to make an election "is deemed an election to be the Non-Purchasing Member."

PPF issued a Buy/Sell Offer Notice to Appellants on May 14, 2009—after the initiation, but before the settlement, of the Insurance Litigation. Appellants allege that Morgan Stanley, through PPF, sought to purchase Appellants' interest in Safeguard in order to: (1) control the Insurance Litigation and reduce the insurers' liability, thus protecting Morgan Stanley's business relationships with the insurers; and (2) allow Morgan Stanley to refinance its line of credit.  Appellants had until July 24, 2009 to elect whether to become a Non-Purchasing Member or a Purchasing Member.  According to Appellants, Morgan Stanley knew Appellants would be practically impeded from becoming Purchasing Members:

Morgan Stanley knew that, in order to buy out PPF's almost 95% share of Safeguard, the BCR parties would have to raise almost 19 times the amount that PPF would have to pay to buy out the BCR parties. On top of that, under the terms of the LLC Agreement, the BCR parties would have to find a lender to assume the approximately $290 million of Safeguard debt held by Prime [(PPF's sole member)], something that PPF would not have to do if it bought the BCR parties' interests.

Doing either of those things was made even more difficult because Morgan Stanley had delayed and impeded Safeguard's effective prosecution of the Insurance Litigation. Had Morgan Stanley not taken bad faith actions to undermine Safeguard's aggressive pursuit of the Insurance Litigation, the proceeds from timely settlement or resolution of the Insurance Litigation would have been available through waterfall distribution to the BCR parties to use as funds to respond to the buy/sell [notice] as a "Purchasing Member." Instead, Morgan Stanley's actions undermined and weakened Safeguard's claims and therefore the BCR parties' financial position.

Appellants also allege that the Morgan Stanley Appellees hindered their ability to raise sufficient capital to become Purchasing Members by, *inter alia*, initiating the Delaware litigation discussed below.[2] Appellants failed to make an election by July 24, 2009, and were thus deemed Non-Purchasing Members.[3]

## 4.    The Louisiana & Delaware Actions

On May 7, 2009, Appellants brought an action in the Civil District Court for the Parish of Orleans against PPF and Morgan Stanley (the "Louisiana Action"), in anticipation of PPF's invocation of the Buy/Sell provision. In that

---

[2] Appellants further allege that, during the Election Period, Morgan Stanley (through PPF and Brown) "issued capital calls beyond the scope of those allowed by the Safeguard LLC Agreement, issued information and data requests to BCR of a burdensome nature and also beyond the scope of those provided for in the LLC Agreement, and dramatically increased the frequency of called Management Committee meetings."

[3] The total purchase price is not alleged in the Amended Complaint. However, the record indicates that the BCR Parties accepted at least $10 million in exchange for their interest in Safeguard.

No. 14-31068

case, Appellants alleged, *inter alia*, that Morgan Stanley and PPF had taken action "to undermine Safeguard's position in the Insurance Litigation and destroy the value of that litigation." On July 29, 2010, the court dismissed Appellants' claims without prejudice on the basis that those claims were premature. The Louisiana Court of Appeal affirmed the dismissal, determining that the BCR Parties' claims—which were premised on a diminution of Safeguard's insurance recovery—would not accrue until the resolution of the Insurance Litigation.

On May 14, 2010, PPF filed a lawsuit against the BCR Parties in the Delaware Chancery Court (the "Delaware I Action"), seeking "a determination that PPF had the right and ability to exercise the Buy/Sell provision . . . and, further, that the Total Purchase Price established in the Offer Notice was proper under the LLC Agreement."[4] PPF alleged that the BCR Parties "embarked on a course of conduct designed to frustrate" PPF's right to invoke the provision, including "their conduct and their claim for damages in the tactically-filed Louisiana Action." On March 14, 2011, by agreement of the parties, the Delaware Chancery Court entered a Stipulated Judgment that "[PPF's] invocation of the Buy/Sell provision of the LLC Agreement on May 14, 2009 was proper" and "[PPF] acted appropriately in setting the Total Purchase Price in the Buy/Sell transaction."[5]

## B.   Procedural Background

On January 11, 2013, Appellants filed the present suit in the United States District Court for the Eastern District of Louisiana. In their Amended

---

[4] The district court took judicial notice of the filings in the Delaware I Action.

[5] PPF filed a second lawsuit in Delaware Chancery Court on July 6, 2009, against BCR and Roch (the "Delaware II Action"), alleging mismanagement and self-dealing by Roch. That action was ultimately dismissed due to PPF's failure to comply with venue and arbitration provisions contained in the LLC Agreement and in relevant employment agreements.

No. 14-31068

Complaint, filed on December 23, 2013, Appellants allege eleven causes of action against Appellees: (1) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(b)-(c); (2) violations of RICO, 18 U.S.C. § 1962(d); (3) violations of the Louisiana Racketeering Act, La. Rev. Stat. § 15:1351; (4) breach of the implied covenant of good faith and fair dealing; (5) tortious interference with contract; (6) breach of fiduciary duty; (7) aiding and abetting breach of fiduciary duty; (8) civil conspiracy; (9) detrimental reliance; (10) unjust enrichment; and (11) violations of the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"), La. Rev. Stat. § 51:1401.

### 1.    Injunction Regarding Challenged Communications

In their original complaint, Appellants referenced ten communications that the Morgan Stanley Appellees contended were privileged. Accordingly, the Morgan Stanley Appellees moved for the complaint to be sealed and for an injunction preventing Appellants' use of those communications. On August 15, 2013, the district court granted the Morgan Stanley Appellees' motion, preliminarily and permanently enjoining Appellants from making any use of the ten communications. Relevant to its analysis were two protective orders to which the parties stipulated in the Louisiana Action—one in September 2009, and one in February 2010 (collectively, the "Protective Orders"). The court concluded that "the Protective Orders clearly restrict the use of the objected to material that was disclosed within the [Louisiana] Litigation to that action . . . and cannot be used here." The court therefore held that, absent approval from the judge in the Louisiana Action, use of communications produced in that litigation would violate the Protective Orders. The district court also concluded that certain information not disclosed in the Louisiana Litigation (and thus not subject to the Protective Orders) was nonetheless privileged, based upon its review of the Morgan Stanley Appellees' descriptions

No. 14-31068

of the purportedly privileged material.  The district court denied Appellants'
subsequent motion for reconsideration, noting that a "supplemental review
confirm[ed]  the  Court's  initial  assessment  that  these  documents"  were
privileged.

Appellants  moved  to  amend  the  Protective  Orders  in  the  Louisiana
Action on January 14, 2014.  The Louisiana court granted the motion in part,
amending the February 2010 Protective Order "to include a narrow exception
declaring that communications involving Safeguard, PPF, and Morgan Stanley
that may demonstrate a direct conflict of interest among the parties are not
subject  to  their  shared  common  legal  interest  privilege."    The  court  also
determined that all ten challenged communications fell within the exception,
and  thus  were  not  privileged.    On  appeal,  the  Louisiana  Court  of  Appeal
reversed  in  part,  concluding  that  eight  of  the  ten  communications  were
privileged.

Appellants moved to dissolve the district court's injunction based on the
amendment to the Protective Orders.  The court denied the motion, concluding
that the amendment did not affect the four documents not produced subject to
the Protective Orders, as the court had "independently concluded" that the
communications were privileged.  The court also determined that the eight
communications the Louisiana Court of Appeal deemed privileged "no longer
fall within the narrow exception articulated in the [Louisiana Action]" and thus
"come within the ambit of the protective orders."  The court then addressed the
two communications no longer subject to the Protective Orders.  With respect
to one of the communications, the court noted that it had "independently
determin[ed] that it was subject to attorney-client privilege."  With respect to
the second communication, the court permitted its use in the present litigation,
given that both the trial and appellate courts in the Louisiana Action had

No. 14-31068

determined that the communication fell within the exception to the February 2010 Protective Order.

### 2.     Motions to Dismiss

On February 5, 2014, the Morgan Stanley Appellees and the Lloyd's Appellees filed motions to dismiss the Amended Complaint for lack of standing under Rule 12(b)(1), lack of personal jurisdiction under Rule 12(b)(2), and failure to state a claim on which relief can be granted under Rule 12(b)(6).[6] The court resolved both motions in its September 2, 2014 order.

With respect to Appellants' claims against the Morgan Stanley Appellees, the district court first considered whether, under Delaware law, Appellants' claims were direct (i.e., they could be brought by Appellants directly) or derivative (i.e., they could only be brought by or on behalf of Safeguard). The court began its analysis by determining that Appellants "allege only a few underlying harms" in the case:

> First, [Appellants] contend that they [were] harmed because the Morgan Stanley [Appellees] undermined Safeguard's recovery in the Insurance Litigation; thus, [Appellants] never received the distributions from the Insurance Litigation to which they were entitled. Second, [Appellants] aver that they were harmed because the Morgan Stanley [Appellees] invoked the Buy/Sell provision in bad faith, prevented [Appellants] from becoming "Purchasing Members," and seized control of Safeguard; thus, [Appellants] were deprived of their future profit interest in Safeguard.

The court concluded that the first alleged harm—"essentially . . . a diminution of value claim"—was derivative, rather than direct, and therefore could not be recovered by Appellants. The court next concluded that although Appellants likely stated direct claims with respect to the second alleged harm relating to the invocation of the Buy/Sell provision, the Delaware I Stipulated

---

[6] The Lloyd's Appellees also argued that the Amended Complaint's allegations of fraud fail to meet the heightened pleading standard under Rule 9(b).

No. 14-31068

Judgment precludes those claims under the doctrine of collateral estoppel. The court reasoned that "by the plain language of the Stipulated Judgment, the Delaware I Litigation determined that the invocation of the Buy/Sell provision was 'proper' and that PPF 'acted appropriately in setting the Total Purchase Price in the Buy/Sell transaction.'" Thus, the Stipulated Judgment precludes Appellants from "now argu[ing] that the price failed to compensate them for the value of their interest in Safeguard," especially given that, in the Delaware I Action, PPF alleged that the BCR Parties were attempting to frustrate PPF's right to purchase Safeguard for a fair and adequate price. The court therefore concluded that because Appellants could not establish an injury with respect to the two harms alleged against the Morgan Stanley Appellees, Appellants lack standing.

With respect to the Lloyd's Appellees' Motion to Dismiss, the court first noted that Appellants' claims against the Lloyd's Appellees concern essentially the same harms as with respect to the Morgan Stanley Appellees. As for Appellants' alleged entitlement to insurance proceeds, the court concluded that Appellants lacked standing because they were neither named insureds, additional insureds, nor intended third-party beneficiaries under the insurance policies. The court also concluded that, for the reasons discussed above, collateral estoppel bars Appellants from contending they were harmed "by the Buy/Sell transaction or the price paid for their interests in Safeguard." Therefore, the district court determined that Appellants lack standing with respect to their claims against the Lloyd's Appellees.

## II.   Standard of Review

"A district court may determine its jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Rodriguez v. Christus Spohn*

No. 14-31068

*Health Sys. Corp.*, 628 F.3d 731, 734 (5th Cir. 2010) (internal quotation marks omitted). Where the lower court's decision rests on one of the first two bases, "in which case the court need not decide among conflicting factual positions," the reviewing court applies a de novo standard of review. *Id.* (internal quotation marks omitted). However, "if the court has relied . . . on its own determination of disputed factual issues, [this court] must then . . . accept the district court's findings unless they are clearly erroneous." *Id.* (internal quotation marks omitted) (first alteration in original). Here, although the district court took judicial notice of, and relied upon, certain public records outside the complaint, it did not resolve any factual disputes. Accordingly, we review the district court's dismissal for lack of standing de novo, "accept[ing] all factual allegations in the plaintiff's complaint as true." *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001).

This court reviews a district court's grant of injunctive relief for abuse of discretion. *Bluefield Water Ass'n, v. City of Starkville*, 577 F.3d 250, 253 (5th Cir. 2009). Any factual determinations underlying the grant of injunctive relief are reviewed for clear error, while conclusions of law are reviewed de novo. *Id.*

## III.     Discussion

### A.     Standing

"Standing under Article III of the Constitution requires that an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). "An injury sufficient to satisfy Article III must be concrete and particularized and actual or imminent, not conjectural or hypothetical." *Susan B. Anthony List v. Driehaus*, --- U.S. ---, 134 S. Ct. 2334, 2341 (2014) (internal quotation marks omitted). Here, the parties dispute whether Appellants have alleged any injury, arguing that the harms Appellants allege are: (1) precluded under collateral estoppel based on

No. 14-31068

the Delaware I Stipulated Judgment; (2) derivative, and thus are harms for which only Safeguard can recover; and/or (3) barred because Appellants have no standing to sue under the insurance policies.[7]

In order to evaluate whether Appellants have standing, we must first ascertain the injuries alleged in the Amended Complaint. *See Rohm & Hass Tex., Inc. v. Ortiz Bros. Insulation, Inc.*, 32 F.3d 205, 209 (5th Cir. 1994) ("We consider each alleged injury in turn to determine whether either is sufficient to satisfy Article III standing."). Appellants essentially allege two categories of harm: (1) a "loss of the financial benefits that [Appellants] would have received from a resolution of the Insurance Litigation but for the delay and corruption of that litigation caused by Morgan Stanley's misconduct" and other costs relating to that delay; and (2) "the financial losses [Appellants] suffered as a result of the bad faith actions taken by Morgan Stanley in connection with the invocation of the Buy/Sell provision." With respect to the first category, Appellants seek "the value [they] would have received—either through a Buy/Sell transaction or as quarterly distributions as a full or part member of Safeguard—from the Insurance Litigation absent [Appellees]' actions to undermine the value of that litigation." With respect to the second category, Appellants seek "the value to [Appellants] of maintaining control of and ownership interest[s] in Safeguard absent the bad faith actions of Morgan

---

[7] We need not decide whether Rule 12(b)(1)—as opposed to Rule 12(b)(6) or Rule 56—is the appropriate procedural vehicle for raising this issue of collateral estoppel. The parties have briefed collateral estoppel as an issue of standing, and the district court dismissed the Amended Complaint on this basis. Because Appellants do not contest Appellees' ability to raise collateral estoppel under Rule 12(b)(1), we will analyze the issue under that standard. *See Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 n.2 (5th Cir. 2005) ("[The plaintiff] did not challenge [the defendant]'s ability to argue res judicata in a motion to dismiss rather than in their response or a motion for summary judgment. Therefore, we review the district court's dismissal of [plaintiff]'s claims under the 12(b)(6) standard." (internal citation omitted)). We note, however, that our collateral estoppel analysis would be the same under either Rule 12(b)(6) or Rule 56.

No. 14-31068

Stanley and Mr. Brown to cause the Buy/Sell to occur" and Appellants' "loss of the ability to be a 'Purchasing Member' of Safeguard and . . . entitle[ment] to all future distributions from Safeguard."  In other words, Appellants seek to recover: (1) the portion of the insurance proceeds to which they allege they are entitled, and (2) harms related to their loss of an ownership interest in Safeguard.  We conclude that the Delaware I Stipulated Judgment bars both categories of harm pursuant to the doctrine of collateral estoppel.  Accordingly, we need not reach Appellants' various alternative arguments for affirming the dismissal of the Amended Complaint.

"In determining the preclusive effect of an earlier state court judgment, federal courts apply the preclusion law of the state that rendered the judgment." *Weaver v. Tex. Capital Bank N.A.*, 660 F.3d 900, 906 (5th Cir. 2011) (per curiam).  Under Delaware law, collateral estoppel applies if:

> (1) The issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Betts v. Townsends, Inc.*, 765 A.2d 531, 535 (Del. 2000) (internal quotation marks omitted).  Here, the parties dispute only the first prong—i.e., whether the present suit requires relitigation of a question of fact essential to the Delaware I Stipulated Judgment.[8]  *See Messick v. Star Enter.*, 655 A.2d 1209, 1211 (Del. 1995) ("Under the doctrine of collateral estoppel, if a court has decided an issue of fact necessary to its judgment, that decision precludes

---

[8] Before the district court, Appellants also argued that the fourth prong was not met, but Appellants have abandoned that issue on appeal.

No. 14-31068

relitigation of the issue in a suit on a different cause of action involving a party to the first case.").

Our analysis begins and ends with the language of the Stipulated Judgment, which states:

> [I]t is hereby stipulated and agreed by [PPF] and [the BCR Parties] . . . and ordered by the Court, as follows:
>
> 1. [PPF]'s invocation of the Buy/Sell provision of the LLC Agreement on May 14, 2009 was proper.
>
> 2. [PPF] acted appropriately in setting the Total Purchase Price in the Buy/Sell transaction.
>
> 3. Once entered, this Order shall constitute a final, unappealable judgment in the above-captioned action, which shall be closed immediately thereafter.[9]

By its plain terms, the Stipulated Judgment precludes the alleged harms for which Appellants now seek to recover.

A determination that the invocation of the Buy/Sell transaction was "proper" and that the Total Purchase Price was "appropriately" set resolves Appellants' complaint regarding their loss of ownership interests in Safeguard—the second alleged category of harm. By adjudicating that the invocation of the Buy/Sell provision was "proper," the Delaware I court necessarily decided that Appellants were properly divested of any ownership interests in Safeguard—the upshot of that provision's invocation. Thus, any harm relating to the loss of those ownership interests is precluded. Moreover, Appellants seek to recover, *inter alia*, "all future distributions" to which they would have been entitled absent the Buy/Sell transaction. However, as Appellees argue, an "appropriately" set Total Purchase Price would necessarily

---

[9] The Stipulated Judgment also contains various "whereas" clauses stating, *inter alia*, that PPF sought "relief relating to its initiation and consummation of the Buy/Sell transaction"—specifically, "a declaratory judgment that its invocation of the Buy/Sell provision was proper and that the Total Purchase Price set in the Buy/Sell Notice was appropriate."

No. 14-31068

take into account the present value of those future distributions. Appellants respond that the issue "is not whether they received 'fair compensation' . . . in the Buy/Sell transaction"; rather, they seek to recover "the value to the BCR parties of maintaining control and ownership interest[s] in Safeguard.'" But these are one and the same, as the purpose of the Buy/Sell transaction was to fairly compensate Appellants for the "value" of such ownership interests. Indeed, the fact that Appellants seek only damages, and not injunctive relief, in their Amended Complaint makes clear that Appellants are seeking to recover the monetary value of their interests in Safeguard—which the Total Purchase Price represented. Appellants' allegation that they are entitled to future distributions, as well as any other ownership value in Safeguard, is nothing more than a complaint that the Total Purchase Price did not adequately compensate them for those interests—i.e., that the price was *inappropriately* set—a proposition directly at odds with the Stipulated Judgment.

The first category of harm—the portion of the insurance proceeds to which Appellants allege they are entitled—is also resolved by the Stipulated Judgment. First, to the extent Appellants contend that the Morgan Stanley Appellees improperly excluded, as a matter of accounting, Safeguard's future interest in the insurance proceeds in the valuation, the Stipulated Judgment directly precludes this argument—as Appellants agreed that PPF "acted appropriately" in setting the price. The Delaware court necessarily decided that the Total Purchase Price adequately accounted for Safeguard's value—taking into account all appropriate assets.[10]    Indeed, in the amended

---

[10] The LLC Agreement states that the Total Purchase Price shall be "equal to the cumulative, aggregate amount that the Notified Party or the Notifying Party, as applicable, would be entitled to receive if the Company were sold for an all-cash price, as specified in the Offer Notice."

No. 14-31068

complaint in the Delaware I Litigation, PPF alleged that Roch was attempting to "preemptively . . . price and control any Buy/Sell transaction by insisting that any valuation of Safeguard's assets be consistent with a valuation made in the Katrina Coverage Litigation."[11]     Thus, it is clear that whether Safeguard's valuation properly incorporated the insurance proceeds as a contingent asset was squarely at issue in the Delaware I Action. Appellants cannot argue that the Total Purchase Price inadequately accounted for the value of the insurance proceeds without arguing that the price was *inappropriately* set. But even setting aside that issue, any claim for insurance proceeds would also be precluded by the Stipulated Judgment's determination that the invocation of the Buy/Sell provision was "proper." Appellants would only have been entitled to those proceeds as owners of Safeguard and, as discussed above, the Stipulated Judgment necessarily determined that Appellants were properly divested of any ownership interests in Safeguard.

Appellants argue that the Stipulated Judgment did not resolve the claims here, as the Delaware I Action was limited to determining the parties' rights under the LLC Agreement. But the judgment is not so limited; it broadly states that the invocation of the Buy/Sell provision was "proper" and that PPF "acted appropriately in setting the Total Purchase Price."[12] In any event, even if the Stipulated Judgment were limited to deciding rights under the LLC Agreement, that judgment nonetheless resolved issues determinative of the harms alleged here, as described above. That Appellants are now seeking recovery on different (non-contractual) legal theories is inapposite, as

---

[11] PPF also quoted a letter in which Roch allegedly stated that "it is imperative that the valuation include among Safeguard's assets the Claims at a present value consistent with the Expert Valuation."

[12] Moreover, in the amended complaint in that action, PPF alleged that the suit was prompted by the BCR Parties' threat "that they deem [the] invocation [of the Buy/Sell provision] . . . a contractual *and fiduciary* breach." (emphasis added).

No. 14-31068

collateral estoppel "precludes relitigation of . . . issue[s] in a subsequent suit . . . concerning a *different claim or cause of action*." *Betts*, 765 A.2d at 534 (emphasis added).

In asserting that the claims here are unrelated to those at issue in the Delaware I Action, Appellants rely on statements contained in PPF's opposition to the BCR Parties' motion to stay the Delaware I Action.[13]  In that brief, PPF argued that the Delaware Action should not be stayed due to the pendency of the Louisiana Action (which the parties agree involved claims similar to those raised in the present action).  Appellants rely in particular on PPF's statement that "the Louisiana Action will require resolution of far more complicated, yet unrelated, claims and issues that concern PPF and Morgan Stanley's conduct in obtaining insurance payment from Safeguard's insurers." However, Appellants take this statement out of context.  PPF's main argument in opposing a stay was not that the two actions were unrelated, but rather that the Delaware I Action was first-filed.  The above-quoted language was offered to support PPF's contention that the Delaware I Action could be resolved more quickly than the Louisiana Action, as the Louisiana Action contained *additional* "irrelevan[t] . . . insurance-related allegations."  Nonetheless, throughout its brief, PPF maintained that the central issues in both actions were intertwined.[14]  For example, PPF stated that the Louisiana Action was "predicated on the allegedly 'unfair price' of the Buy/Sell transaction" and "[w]hether PPF properly set the Total Purchase Price in the Offer Notice is

---

[13] The Delaware I court never ruled on the motion to stay.

[14] Accordingly, Appellants' contention (first made in their reply brief) that judicial estoppel bars Appellees from contending that the two actions are related is inapplicable.  *See Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005) (stating that judicial estoppel applies where "the position of the party against which estoppel is sought is plainly inconsistent with its prior legal position").

No. 14-31068

precisely the determination PPF seeks in [the Delaware I] action."[15]  Indeed, in support of their motion to stay, the BCR Parties asserted that the claims in the two actions were "substantially identical" and that the Delaware I court "could not grant the relief that PPF seeks in this action without holding that the [BCR Parties] [are] not entitled to relief they expressly seek in the Louisiana Action."  Accordingly, the briefing related to the motion to stay the Delaware I Action does not alter our conclusion that collateral estoppel applies.

Appellants also focus on the Louisiana courts' dismissal of that action as premature, given that the claims at issue there would not accrue until the resolution of the Insurance Litigation.  Appellants argue that because the Insurance Litigation was not resolved (and thus Appellants had not yet suffered harm) by the time of the Stipulated Judgment, the Stipulated Judgment could not have resolved the claims in the present action.  This argument lacks merit.  As discussed above, the alleged harm relating to the insurance proceeds boils down to an allegation that PPF failed to incorporate the *present* value of Safeguard's future interest in those proceeds in setting the Total Purchase Price.  As with any contingent asset, the fact that the amount of the proceeds was not precisely set at the time of Safeguard's valuation would not have prevented PPF from incorporating the present value of that asset into the valuation.  Moreover, as we have stated, the Stipulated Judgment precludes Appellants from asserting any claim of entitlement to the insurance proceeds, as that judgment necessarily adjudicated that Appellants' ownership interests in Safeguard were properly divested.

We do not venture to guess what prompted Appellants to enter into the Delaware I Stipulated Judgment, although it is fair to assume that Appellants

---

[15] PPF also contended that "the issue of whether the Total Purchase Price was appropriately set by PPF is likely to take much longer to resolve in Louisiana than it is in Delaware."

No. 14-31068

did not intend for that judgment to preclude all future claims against Appellees. Even so, collateral estoppel is focused not on the parties' subjective intent, but on the objective question of whether the present claims require litigation of issues essential to a prior judgment. *See Betts*, 765 A.2d at 535. For the reasons discussed above, Appellants' cannot recover for their alleged harms without relitigating the propriety of the Buy/Sell transaction and the Total Purchase Price—which the Delaware I Stipulated Judgment resolved. Accordingly, because Appellants have failed to allege any injury that is not barred by collateral estoppel, they do not have standing to bring this action.

**B.    Privileged Communications**

Appellants also challenge the district court's injunction barring the use and disclosure in this action of nine communications among Morgan Stanley, Safeguard, in-house counsel, and outside counsel. As an initial matter, the Morgan Stanley Appellees correctly note that Appellants failed to address in their opening brief the impact of the Louisiana Protective Orders on this issue. Appellants focus only on the merits of whether the communications are privileged as a matter of federal common law, ignoring the district court's decision to enjoin the use of eight communications deemed privileged by the Louisiana Court of Appeal because they "come within the ambit of the protective orders." Accordingly, Appellants have waived any challenge to that ruling—an independent basis for entering the injunction as to those eight communications. *See Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 594 (5th Cir. 2006) ("We need not consider this argument because the [appellant] effectively waived it by failing to raise it in its opening brief.").

This leaves for our review one remaining communication: the May 12, 2009, communication which the Louisiana Court of Appeal deemed not

No. 14-31068

privileged, but which the district court deemed privileged.[16] This communication—which is not memorialized in any document, but which is described by the parties in sealed filings submitted below—was made by Safeguard's corporate counsel to Morgan Stanley. Appellants argue that the common legal interest privilege under the federal common law does not apply to these communications,[17] as (1) the privilege only applies to defendants, and (2) the privilege does not apply to communications evincing a conflict of interest between the parties.[18] We must first address the Morgan Stanley Appellees' contention that Appellants are judicially estopped from making these arguments, as Appellants stipulated in the February 2010 Protective Order that:

> Because [Morgan Stanley] is involved in the management of Safeguard, including with respect to Safeguard's [Insurance] litigation, and because Safeguard's insurance coverage is obtained through [Morgan Stanley], Safeguard and [Morgan Stanley] share a common legal interest in Safeguard's insurance claims. As such, their communications with each other do not waive any privilege to which those communications would otherwise be entitled. La. Code of Evid. art. 506(B)(3).

However, judicial estoppel applies only where "the position of the party against which estoppel is sought is plainly inconsistent with its prior legal position." *Jethroe*, 412 F.3d at 600. Here, Appellants' previous assertion that its communications were privileged under *Louisiana law* is not plainly

---

[16] The district court refused to enter an injunction with respect to the second communication the Louisiana Court of Appeal deemed not privileged, and the Morgan Stanley Appellees do not challenge that decision on appeal.

[17] The parties' privilege arguments are premised exclusively on the federal common law of privilege.

[18] Appellants also contend that the district court abused its discretion by failing to engage in a communication-by-communication analysis in determining privilege. But this assertion is belied by the district court's orders, which make clear that the court "th[o]roughly examined the communications" before making its privilege determinations.

22

No. 14-31068

inconsistent with their current contention that the communications are not protected under the *federal common law*.[19]

On the merits, whether the common legal interest privilege applies only to co-defendants is a close question.  This court has defined the privilege narrowly, stating:

> According to our circuit precedents, the two types of communications protected under the [common legal interest] privilege are: (1) communications between co-defendants in actual litigation and their counsel; and (2) communications between *potential* co-defendants and their counsel.  With respect to the latter category, the term "potential" has not been clearly defined.  However, because the privilege is an obstacle to truthseeking, it must be construed narrowly to effectuate necessary consultation between legal advisers and clients.

*In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001) (internal citations and quotation marks omitted); *see also United States v. Newell*, 315 F.3d 510, 525 (5th Cir. 2002) (quoting same).  However, this court has not expressly held that the privilege is inapplicable to co-plaintiffs.  *See Stanley v. Trinchard*, No. CIV.A. 02-1235, 2005 WL 230938, at *1 (E.D. La. Jan. 27, 2005) ("[I]t is questionable in the Fifth Circuit whether the common interest doctrine extends to plaintiffs.").  Several courts—including lower courts in this circuit—have held that the privilege extends to co-plaintiffs in litigation.  *See, e.g.*, *United States v. Under Seal (In re Grand Jury Subpoenas, 89-3 & 89-4, John Doe 89-129)*, 902 F.2d 244, 249 (4th Cir. 1990) ("[W]hether the jointly interested persons are defendants or plaintiffs, . . . the rationale . . . remains unchanged: persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more

---

[19] The Morgan Stanley Appellees also assert that Appellants waived their argument that the common legal interest privilege does not apply by failing to raise the argument below.  However, Appellants clearly raised the argument before the district court.

No. 14-31068

effectively prosecute or defend their claims."); *In re Age Ref., Inc.*, 447 B.R. 786, 806 (Bankr. W.D. Tex. 2011) ("[C]ounsel for the Committee and counsel for the Trustee seek to jointly pursue litigation on behalf of the estate to their joint benefit.  The common interest doctrine would apply to protect privileged information shared in the process of prosecuting estate claims.").

But we need not reach this issue.  Even if we were to conclude that the common legal interest privilege extends to some communications between Morgan Stanley and Safeguard's counsel,[20] the privilege does not apply to the remaining communication at issue.  Communications may be protected by the common legal interest privilege only if those communications "*further* a joint or common interest.'"  *In re Santa Fe Int'l Corp.*, 272 F.3d at 711–12 (quoting *Aiken v. Tex. Farm Bureau Mut. Ins. Co.*, 151 F.R.D. 621, 623 (E.D. Tex. 1993)) (emphasis added); *see also* Edward J. Imwinkelried, The New Wigmore: Evidentiary Privileges § 6.8.1 (2d ed. 2014) (stating that, for the privilege to apply, the communications must be "intended to further the parties' common interest").  We have reviewed the parties' summaries of the remaining communication,[21] and we conclude that it was not made in furtherance of (but rather is diametrically opposed to) the prosecution of the Insurance Litigation.

---

[20] Even if the common legal interest privilege extends to plaintiffs, we also question whether the privilege could apply to any of the communications between Morgan Stanley and Safeguard, which were not "co-plaintiffs" in the Insurance Litigation (Safeguard was the sole plaintiff).  Although Morgan Stanley had some interest in the litigation due to its interest in Safeguard (via PPF), such an interest may be insufficient to give rise to the privilege.  *Cf. Stanley* 2005 WL 230938, at *1 ("Smith's client, Burge, is not a co-plaintiff or potential co-plaintiff with Stanley and Sheriff Strain.  Smith and Burge have a financial interest in the outcome of this litigation.  This is an insufficient basis for finding a common legal interest . . . .").  However, because we conclude that the communication at issue was not in furtherance of any joint interest, we need not reach this issue.

[21] These summaries were filed under seal before the district court.

No. 14-31068

As such, the common legal interest privilege does not apply to this communication.[22]

Accordingly, we reverse the district court's grant of the injunction with respect to this communication. We note, however, that this communication has no bearing on the collateral estoppel issues discussed above, and thus does not affect our conclusion that the Amended Complaint was properly dismissed.

## IV.    Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED in part and REVERSED in part. Costs shall be borne by Appellants.

---

[22] The Morgan Stanley Appellees briefly argue that the communications are privileged because Morgan Stanley was an agent of Safeguard's counsel, relying on *United States v. Pipkins*, 528 F.2d 559, 562 (5th Cir. 1976) ("[I]n appropriate circumstances the privilege may bar disclosures made by a client to non-lawyers who . . . had been employed as agents of an attorney."). Although Safeguard delegated to Morgan Stanley "the role of negotiating the insurance claims with the Insurers," there is no evidence suggesting that Morgan Stanley was an agent of Safeguard's counsel for purposes of the Insurance Litigation.

# *United States Court of Appeals*
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE**
**NEW ORLEANS, LA 70130**

July 21, 2015

Mr. William W. Blevins
U.S. District Court, Eastern District of Louisiana
500 Poydras Street
Room C-151
New Orleans, LA 70130

     No. 14-31068     BCR Safeguard Holding, L.L.C., et al v.
                 Morgan Stanley Real Estate, et al
                 USDC No. 2:13-CV-66

Dear Mr. Blevins,

Enclosed is a copy of the judgment issued as the mandate and a
copy of the court's opinion.

                    Sincerely,

                    LYLE W. CAYCE, Clerk

                    By: _____
                    Dantrell L. Johnson, Deputy Clerk
                    504-310-7689

cc:
     Mr. Harvey Sylvanous Bartlett, III
     Mr. Mark Raymond Beebe
     Mr. Steven I. Froot
     Mr. Nicholas A. Gravante, Jr.
     Mr. Gladstone Nathaniel Jones, III
     Mr. Mark Alan Mintz
     Ms. Amy Lynn Neuhardt
     Mr. Tyler John Rench
     Ms. E. Paige Sensenbrenner
     Mr. Jake Marvin Shields
     Ms. Lynn Elizabeth Swanson
     Mr. Robert Patrick Vance
     Mr. Edward Dirk Wegmann